Estelle De Haven **JOHNSON**, Plaintiff,

v.

**CHILKAT INDIAN VILLAGE**, Dick Hotch, Johanna Hotch, Joseph Hotch, Rose Hotch, Ruth Kasko, Katzeek Smith, Helen King, Margaret Stevens, Lani Strong, Martha Willard, Marvin Willard, and other unknown residents of Klukwan, Alaska, Defendants.

**No. J76–12 Civil.**

United States District Court,
D. Alaska.

Sept. 27, 1978.

Steven S. Bell, Perkins, Coie, Stone, Olsen & Williams, Anchorage, Alaska, for plaintiff.

Linn H. Asper, Haines, Alaska, for Joseph Hotch and Chilkat Indian Village.

Brad J. Brinkman, Elisabeth A. Werby, Alaska Legal Services Corp., Juneau, Alaska, for defendant Martha Willard.

## MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

This cause comes before the court on defendants' motion to dismiss. This litigation arises out of claims to the possession

and ownership of a number of artifacts of significance to the culture and heritage of the Tlingit people of Klukwan, Alaska.[1] The plaintiff, Estelle de Haven Johnson, a Tlingit Indian who resides in Arizona, claims an interest in these artifacts and has on two occasions unsuccessfully attempted to remove them from the Village where they have been since at least the last century.[2] The plaintiff is a former resident of the village and her claim is based upon an application of the Tlingit equivalent of the law of descent and distribution.

The defendant Chilkat Indian Village Council is the governing body of the Village of Klukwan and the real property which makes up the former Klukwan Indian Reservation. The Council is organized under section 16 of the Indian Reorganization Act, 25 U.S.C. § 476 (1970). *See generally* Comment, *Tribal Self-Government and the Indian Reorganization Act of 1934*, 70 Mich.L. Rev. 955 (1972). The Klukwan Reservation was originally established by Executive Order but was later confirmed by Congress in the Act of September 2, 1957, 71 Stat. 596. Under the Alaska Native Claims Settlement Act, as amended, the Village was authorized to receive the former Reservation and additional lands in fee simple absolute. 43 U.S.C.A. § 1615(d) (Supp.1978). In order to carry out the functions of Village government the residents have adopted a constitution and by-laws which give the seven member Village Council the power to "prevent the sale, disposition, lease, or encumbrance of any . . . assets of the Village without the consent of the Council," Article IV(e), and to "preserve and cultivate the arts, crafts and culture of the Indians of this community and their cus-

toms not in conflict with Territorial law," Article IV(n). Constitution and By-Laws of the Chilkat Indian Village (Defendants' Exhibit A).

The Council alleges that plaintiff Johnson has contracted to sell whatever interest she has in the artifacts to art dealers organized as Northwest Historical Corp., a corporation based in the State of Washington. The Council is opposed to the sale or removal from the Village of the disputed artifacts. The defendants have a view of the Tlingit law of property that differs from the plaintiff's and contends that the ceremonial objects in dispute are held in common by all the residents of Klukwan.[3] After the Council became aware of the sale and attempts to remove the artifacts it passed a resolution prohibiting trespassing on Village land for the purpose of removing artifacts (Plaintiff's Exhibit B). Since this resolution was passed, the Council, through various residents acting for it, and other individuals in possession of the artifacts have prevented the plaintiff from claiming or removing the disputed objects from the village. In order to provide a forum for the resolution of disputes such as the one presented here, the Council has passed a resolution providing for the composition and jurisdiction of a tribal court. The court will discuss this tribal court in more detail later in this memorandum.

The plaintiff in this action has sued the Chilkat Indian Village and other individuals who have prevented her from removing the artifacts from the Village or are in possession of them. The jurisdiction of the court is based upon diversity, 28 U.S.C. § 1332 (1970) and the Indian Civil Rights Act, 25 U.S.C. § 1301–03 (1970). The defendants'

1. Some of the documents before the court indicate that the artifacts may be worth as much as $250,000.

2. A number of elderly Tlingits born in the last century or the early twentieth century have submitted affidavits attesting that the artifacts have been in the Village as long as they can remember and were informed by their ancestors that the artifacts have been in the Village as much as a hundred years before that time.

3. This court in territorial days while deciding a partnership dispute described tenure under Tlingit law as "essentially communal." *Demmert v. Demmert*, 115 F.Supp. 430, 431, 14 Alaska 425 (D. Alaska 1953). It should be noted that any references to Tlingit law in this memorandum are not intended to be interpretations of that law but are used only insofar as the difficulties of determining the application of tribal law are relevant to determining the power and propriety of the court's jurisdiction in this case.

motion to dismiss is based upon the contention that the Village Council is immune from suit and that since the Village Council is an indispensible party under Fed.R.Civ.P. 19(b), these causes of action must be dismissed as to all the individual defendants.

█ The parties are in agreement that under a recent decision of the Supreme Court the Chilkat Indian Village is protected by sovereign immunity and cannot be sued without its consent. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978).[4] *See also United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 512–13, 60 S.Ct. 653, 84 L.Ed. 894 (1940); *Puyallup Tribe, Inc. v. Washington Dept. of Game*, 433 U.S. 165, 97 S.Ct. 2616, 53 L.Ed.2d 667, 172–73 (1977); *Atkinson v. Haldane*, 569 P.2d 151 (Alaska 1977). The Council has not consented to this suit and must be dismissed. The question remaining is whether the court should proceed to decide the claims against the individual defendants.

█ The decision whether to dismiss because of the absence of an indispensable party under Rule 19(b)[5] should not be based on formalistic or mechanistic grounds "but rather on pragmatic analysis of the effect of a potential party's absence." *Bethel v. Peace*, 441 F.2d 495, 496 (5th Cir. 1971). *Prescription Plan Service Corp. v. Franco*, 552 F.2d 493, 496 (2nd Cir. 1977). In a pre-Rule 19 case Learned Hand described the question of the indispensability of a party as "dependent in each case upon the facts." *Roos v. Texas Company*, 23 F.2d 171, 172 (2nd Cir. 1927) cert. denied, 277 U.S. 587, 48 S.Ct. 434, 72 L.Ed. 1001 (1928). The court must weigh the factors prescribed in Rule 19(b) and "make a judgment balancing the respective interests." *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1326–27 (9th Cir. 1975) cert. denied, 425 U.S. 903, 96 S.Ct. 1492, 47 L.Ed.2d 752 (1976). The court believes that three factors require the dismissal of the plaintiff's cause of action: 1) A decision in the Village Council's absence would prejudice its interest in the dispute; 2) A judgment rendered in the Village Council's absence is likely to be inadequate; and 3) The formation of a tribal court system will provide an adequate and more appropriate forum for the resolution of the difficult issues of Tlingit custom, tradition, and law presented by this dispute.

The defendants have correctly framed the issues in this case as whether the plaintiff is entitled to the possession and control of the artifacts as against the individual defendants and whether the Council has the power and authority to prevent removal of the disputed artifacts. Any decision by this court on these issues will prejudice the position of the Council in this dispute. The plaintiff has sought to narrow the issues in light of the *Santa Clara* decision to simply a dispute over the conversion of personal property unrelated to the right of the plaintiff to remove the works of art from the Village. From the beginning of this controversy the plaintiff has sought to vindicate her property rights so that the artifacts

---

4. The *Santa Clara* decision also held that the only procedural device available to enforce the Indian Civil Rights Act in federal court is habeas corpus, 98 S.Ct. at 1677, and that the Act does not create a cause of action for violations of civil rights against tribal officials analogous to those made possible by *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The *Santa Clara* decision forecloses the plaintiff from using the Indian Civil Rights Act against either the Village or individual defendants acting as officials in a diversity case such as this one.

5. Fed.R.Civ.P. 19(b) states:
   (b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

could be moved from the Village and presumably sold to the art dealers in the State of Washington. The pleadings request a determination of a property interest unqualified by the objects remaining in the Village.

Even if the court could fashion a judgment that would require the artifacts to stay in the Village, the Council asserts a governmental interest that is very much related to the communal property interest said to exist in all the residents of Klukwan. Numerous affidavits before the court state that the artifacts are regarded as having great significance to the culture and heritage of the Village. For example, the artifacts are used in funerals and other ceremonies of the residents. The "property" interests of the villagers and the efforts of the Village government to preserve its heritage are so entwined that any decision by this court as to the interest of the plaintiff would prejudice the Chilkat Indian Village Council. If the plaintiff desires a determination of her interest in the artifacts unrelated to her efforts to remove them from the Village, it is difficult to understand why she would not allow the Village institutions that are familiar with Tlingit custom and tradition to make that decision.

The courts in both *Lomayaktewa v. Hathaway*, 520 F.2d 1324 (9th Cir. 1975) cert. denied, 425 U.S. 903, 96 S.Ct. 1492, 47 L.Ed.2d 752 (1976) and *Tewa Tesuque v. Morton*, 498 F.2d 240 (10th Cir. 1974) held that the respective Indian tribes or groups were indispensable to the adjudication of those cases because the tribes would be prejudiced by a federal court's decision. The plaintiff has attempted to distinguish these cases because they involve leases. This court sees no reason to regard potential damage to a Village's heritage and culture as less important than a tribe's interest in developing a coal mine or a residential subdivision.

Because the court does not have jurisdiction over the Village Council, any judgment determining plaintiff's interest would be inadequate and would only lead to a continuation of the dispute. The defendant Council has taken steps to provide a forum that is more appropriate to the determination of Tlingit law. The Council has adopted a resolution establishing a court system which would have jurisdiction, *inter alia*, over civil causes in which an Indian is a defendant and cases involving descent and distribution of personal property of any deceased Indian in the Village. The trial level of this court would consist of the Council sitting as a court. Although there is nothing unusual about unity between the legislature and judicial branches in tribal governments, *See* Recent Developments, 46 Wash.L.Rev. 541, 544–45 (1971), this court would not consider such a system adequate if it did not provide for an appellate court which will be both experienced in Tlingit custom, tradition and law and have no personal interest in this dispute. The Council resolution provides for such an appeal process. The appellate court will consist of one member from each of the two clans in the Village, who will have an advisory capacity, and a Chief Judge, who shall be a Tlingit Indian, not a member of the Chilkat Indian Village, and will "be solely responsible for the final decisions of the Court of Appeals." (Art. III, Section 1, Exhibit C). The judges of the Court of Appeals are to have no financial or personal interest in the outcome (Art. III, Section 3, Exhibit C) and "No Judge may be removed for reversing a decision of the Chilkat Indian Village Council sitting as the Trial Court of the Chilkat Indian Village." (Art. IV, Section 2, Exhibit C). This court sees no reason to believe that both the trial court and a neutral appellate court will not make a good faith attempt to apply Tlingit law to this dispute. There is time enough to intervene if such a proceeding or decision should turn out to be a farce or a mere sham.

█ This court has been presented with numerous affidavits of experts on Tlingit law. The facts in this case go back to transactions occurring at the turn of the century and legal concepts and customs that have their origins in antiquity. The Supreme Court has recognized on many occasions the power of Indian peoples to regu-

late "their internal and social relations." *United States v. Kagama*, 118 U.S. 375, 381–82, 6 S.Ct. 1109, 30 L.Ed. 228 (1886); *United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978), and to make their own law in such areas as inheritance. *See Jones v. Meehan*, 175 U.S. 1, 20 S.Ct. 1, 44 L.Ed. 49 (1899).[6] When it is considered that there are present in this case complexities of Tlingit law in the area of descent and distribution, property concepts and language foreign to Anglo-American courts and that there are claims that these ceremonial objects are of vital importance to the heritage of the Village, it would be hard to imagine a more appropriate situation to apply the "well-established policy-rule that the courts will not interfere with the internal workings of Indian tribes." *Tewa Tesuque v. Morton*, 498 F.2d 240, 243 (1974). *See also Prairie Band of Pottawatomie Tribe of Indians v. Udall*, 355 F.2d 364 (10th Cir. 1966); *Martinez v. Southern Ute Tribe*, 273 F.2d 731 (10th Cir. 1959). The cases that require exhaustion of tribal remedies under the Indian Civil Rights Act also demonstrate this principle. *O'Neal v. Cheyenne River Sioux Tribe*, 482 F.2d 1140 (8th Cir. 1973). *United States ex rel. Cobell v. Cobell*, 503 F.2d 790 (9th Cir. 1974). Although these cases did not involve diversity jurisdiction, the rule that intervention in the internal affairs of a tribe should be avoided applies as well in the rare case, such as this one, where members of the same tribe are from different states.

■ The court notes that there is nothing in the record to indicate that the Secretary of Interior has approved the Chilkat Village tribal court system. If the Secretary does not approve the court system or if the system is not established within a reasonable time this court may reconsider its decision, but it should be noted that the availability of an alternative forum is just one factor in determining whether a party is indispensable.

6. The court notes that 28 U.S.C. § 1360 (1970) which gives a number of States, including Alaska, jurisdiction over some civil causes of action between Indians states that:

(c) Any tribal ordinance or custom heretofore or hereafter adopted by an Indian tribe,

Accordingly IT IS ORDERED:

THAT defendants' motion to dismiss is granted and the plaintiff's action is dismissed in its entirety without prejudice.

band, or community in the exercise of any authority which it may possess shall, if not inconsistent with any applicable civil law of the State, be given full force and effect in the determination of civil causes of action pursuant to this section.