**CHILKAT INDIAN VILLAGE, a federally recognized Indian Tribe, Plaintiff–Appellant,**

v.

**Michael R. JOHNSON, an individual, Michael R. Johnson, Inc., a Washington Corporation, The Whale House Group, Defendants–Appellees,**

and

**State of Alaska, Defendant–Intervenor–Appellee.**

**No. 86–4312.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 3, 1987.

Decided March 23, 1989.

1470

Donald S. Cooper, Carol H. Daniel, Alaska Legal Services Corp., Anchorage, Alaska, for plaintiff-appellant.

Donna C. Willard, Willoughby & Willard, Anchorage, Alaska, for defendants-appellees.

Douglas K. Mertz, Asst. Atty. Gen., Juneau, Alaska, for defendant-intervenor-appellee.

Before POOLE, FERGUSON and CANBY, Circuit Judges.

CANBY, Circuit Judge:

■ Chilkat Indian Village is an Indian group organized under section 16 of the Indian Reorganization Act (IRA), 25 U.S.C. § 476. It owns fee lands located in and around Klukwan, Alaska. The Village sued Michael Johnson and sixteen other defendants in federal district court, alleging that defendants violated a Village ordinance and federal law by removing Tlingit Native artifacts from Klukwan. The district court dismissed the Village's complaint for lack of subject matter jurisdiction,[1] ruling that the Village failed to state a cause of action arising under federal law, as required by 28 U.S.C. §§ 1331 and 1362.[2]

■ We review the district court's ruling on subject matter jurisdiction *de novo.* *Pe-*

---

**1.** The district court first dismissed the tribe's claim that defendants had violated 18 U.S.C. § 1163 in a Memorandum and Order published at 643 F.Supp. 535. The court dismissed the remaining claims in an unpublished Memorandum and Order of Dismissal. Both rulings are under review on this appeal.

**2.** 28 U.S.C. § 1362 provides:

The district courts shall have original jurisdiction of all civil actions, brought by an Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States.

This statute does not relieve the tribe of the necessity of establishing the existence of a federal question. *Gila River Indian Community v. Henningson, Durham & Richardson,* 626 F.2d 708, 712 (9th Cir.1980), *cert. denied,* 451 U.S. 911, 101 S.Ct. 1983, 68 L.Ed.2d 301 (1981).

ter Starr Productions Co. v. Twin Continental Films, Inc., 783 F.2d 1440, 1442 (9th Cir.1986).

### I.

The artifacts at issue in this case are four carved wooden posts and a wooden partition called a rain screen. They have been described as "the finest example of Native art, either Tlingit or Tsimshian, in Alaska." Emmons, the Whale House of Chilkat, in *Raven's Bones* 81 (1982). Art dealers and museums have repeatedly attempted to purchase the artifacts.

The Chilkat Indian Village Council is the governing body of the Village under the Village's IRA-authorized constitution. In 1976, the Council enacted an ordinance prohibiting the removal of artifacts from Klukwan:

No person shall enter on to the property of the Chilkat Indian Village for the purpose of buying, trading for, soliciting the purchase of, or otherwise seeking to arrange the removal of artifacts, clan crests, or other traditional Indian art work owned or held by members of the Chilkat Indian Village or kept within the boundaries of the real property owned by the Chilkat Indian Village, without first requesting and obtaining permission to do so from the Chilkat Indian Village Council.

No traditional Indian artifacts, clan crests, or other Indian art works of any kind may be removed from the Chilkat

Indian Village without the prior notification of and approval by, the Chilkat Indian Village Council.

Chilkat Indian Village Ordinance of May 12, 1976.

On April 22, 1984, several defendants removed the four posts and the rain screen from Klukwan and delivered them to defendant Michael Johnson, an Arizona art dealer. When the Village discovered that the artifacts had been removed, it notified authorities of the State of Alaska. The State began a criminal investigation, located the artifacts in a warehouse in Seattle, Washington, and took custody of the artifacts.[3]

The Village then filed suit, seeking return of the artifacts and monetary damages for their removal. The Village alleged that it was a federally recognized Indian tribe, and that (1) the artifacts belong to the tribe, and defendants removed them without permission[4]; (2) defendants violated the ordinance prohibiting removal of artifacts; and (3) defendants violated 18 U.S.C. § 1163.[5] The district court dismissed the Village's section 1163 claim, ruling that the statute did not create a private cause of action. *Chilkat Indian Village v. Johnson*, 643 F.Supp. 535 (D.Alaska 1986). In a separate memorandum and order, the district court also ruled *sua sponte* that it lacked subject matter jurisdiction over the Village's remaining claims. The court reasoned that (1) the Village's first claim was a simple conversion claim with no federal

---

**3.** The State later dropped its investigation, and no criminal charges were ever filed. The artifacts remain in the Seattle warehouse.

**4.** The Indian defendants filed answers alleging that only they, as members of the Whale House, owned the artifacts. For purposes of our decision on jurisdictional grounds, however, we accept as true the allegations of the complaint that the tribe has a paramount proprietary interest in the artifacts.

**5.** Section 1163 provides:

Whoever embezzles, steals, knowingly converts to his use or the use of another, willfully misapplies, or willfully permits to be misapplied, any of the moneys, funds, credits, goods, assets or other property belonging to any Indian tribal organization or intrusted to the custody or care of any officer, employee, or agent of an Indian tribal organization; or

Whoever, knowing any such moneys, funds, credits, goods, assets, or other property to have been so embezzled, stolen, converted, misapplied or permitted to be misapplied, receives, conceals, or retains the same with intent to convert it to his use or the use of another—

Shall be fined not more than $5,000, or imprisoned not more than five years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000, or imprisoned not more than one year, or both.

As used in this section, the term "Indian tribal organization" means any tribe, band or community of Indians which is subject to the laws of the United States relating to Indian affairs or any corporation, association, or group which is organized under any of such laws.

underpinning; and (2) the Village ordinance claim did not arise under federal law for purposes of 28 U.S.C. §§ 1331 and 1362.

## II.

█ We agree that section 1163 provides no private right of action. In determining whether a statute gives rise to a private right of action, "[t]he central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979). It is true that the Supreme Court's "focus on congressional intent does not mean that [the Court] requires evidence that Members of Congress, in enacting the statute, actually had in mind the creation of a private cause of action." *Thompson v. Thompson,* 484 U.S. 174, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988). Nevertheless,

> The intent of Congress remains the ultimate issue, ... and "unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist."

*Id.* (quoting *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981)). Nothing in the language or statutory structure of section 1163 gives rise to an inference that Congress intended to create a private right of action. The legislative history suggests that Congress was wholly concerned with criminal, rather than civil, objectives. The Senate Report accompanying section 1163 consists primarily of a letter from Assistant Secretary of the Interior Andaahl, who described problems attending the expansion of fiduciary responsibilities of tribal officials:

> [I]n most instances the creation of fiduciary positions has not been paralleled by corresponding safeguards in the law and order codes under which the tribes operate. Even in those instances where criminal sanctions are provided in the tribal codes, the tribal members have been extremely reluctant to bring actions in the

tribal courts against apparently faithless tribal officials.

\*　\*　\*　\*　\*　\*

> In these circumstances, it is important that adequtae [sic] penal safeguards be established to protect the tribal members from actions of dishonest or corrupt tribal officials and other types of peculation.

Sen.Rep. No. 2723 (1956), *reprinted at* 1956 U.S.Code Cong. & Admin. News 3841, 3842. In light of these difficulties in "obtaining the prosecution of persons who misused tribal property [,]" the Committee recommended passage. *Id.* The clear congressional emphasis seems to have been upon replacing a defective tribal criminal penalty with an effective federal one; a civil remedy cannot be fit easily into the picture.

Finally, the same legislative history recites that section 1163 is modeled after 18 U.S.C. §§ 641, 656 and 660. *Id.* As the district court noted, *Chilkat,* 643 F.Supp. at 536–37, none of those sections has been held to give rise to a private right of action. In the absence, then, of any basis for inferring an intent on the part of Congress to create a private remedy, we are not free to fashion one. *See Thompson,* 108 S.Ct. at 520; *Touche Ross,* 442 U.S. at 576, 99 S.Ct. at 2489. We therefore affirm the district court's dismissal of the Village's section 1163 claim.

## III.

█ We also agree with the district court that the Village's first and fifth causes of action amount to claims for conversion, and that they do not arise under federal law. Both claims are based upon allegations that the Village has a "paramount possessory interest" in the artifacts, and that the defendants took the artifacts without the Village's permission. The Village strongly asserts that its possessory interest arises under and is protected by federal law, but it has neither alleged nor offered any factual or legal bias for that assertion. The artifacts are not alleged to be trust property, nor property held pursuant to federal statute or federal common law. Whatever proprietary interest the

Village has in the artifacts is a creature of tribal law or tradition wholly unconnected with federal law. No construction of federal law is necessary to adjudicate title. The claim is therefore entirely different from the claim successfully maintained in *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974). In that case, the Oneida Nation was suing on a possessory interest, a right of occupancy, that had been shaped and protected by federal common law, reinforced by a treaty and the federal Nonintercourse Acts, *Id.* at 677–78, 94 S.Ct. at 782–83. No such federal foundation underlies the Village's conversion claims in this case.[6]

## IV.

■■■ The most difficult question is whether the Village's claim to enforce its ordinance arises under federal law. For reasons to be explained, we believe that the answer depends upon the status of the defendants against whom the ordinance is sought to be imposed.

Although the matter is certainly not free from doubt, we conclude that the claims for enforcement of the ordinance against the non-Indian defendants[7] does arise under federal law within the meaning of 28 U.S.C. §§ 1331 and 1362.

For its second "cause of action," the Village alleges:

The Chilkat Tribe possesses paramount sovereign rights over the Whale House artifacts. Relying on the authority given to it by its federally-approved constitution and its reserved powers, the Chilkat Tribe has regulated the use and disposition of all tribal artifacts found within its borders.

It then goes on to allege that the Village's ordinance prohibited removal of the artifacts without permission of the Village Council, that the defendants violated the ordinance, and that the Village "can enforce the ordinance ... with an action for equitable relief and damages pursuant to 28 U.S.C. § 1362."

The defendants and intervenor State of Alaska contend that this claim is merely one to enforce the Village's ordinance, and that it does not raise any issue of federal law whatsoever. They rely on *Boe v. Fort Belknap Indian Community*, 642 F.2d 276 (9th Cir.1981), in which we held that no federal question was raised by Indian plaintiffs who sought to contest the results of a tribal election on the ground that tribal election laws had been violated. But to hold that this case is the same as *Boe*, we would have to ignore the foundation of federal law that the Village will clearly have to lay, and litigate, in order to enforce its ordinance against non-Indians. In *Boe* we said:

Since plaintiffs' claims do not involve a dispute or controversy respecting the va-

**6.** Nothing in our holding is intended to denigrate the importance, emphasized in the dissent, that these artifacts may have to the Village. Importance alone does not create federal character, however.

We do not rule here on the availability of a remedy in state court under Public Law 280, 28 U.S.C. § 1360, but we take issue with the dissent's view that these artifacts are removed from the scope of Public Law 280 by § 1360(b). Section 1360(b) provides that nothing in Public Law 280 shall authorize states to adjudicate the ownership or right to possession of any tribal property *"that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States."* (Emphasis added.)

Contrary to the dissent's view, the artifacts in issue here are not subject to a restriction against alienation as that term is used in § 1360(b). Unlike allotments, *see* 25 U.S.C. § 348, these artifacts are freely alienable by the owners.

While 18 U.S.C. § 1163 protects tribal property by punishing thefts of it, that statute certainly does not restrict the tribe from alienating its property.

Nor does *Bryan v. Itasca County*, 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976), preclude the Village from adjudicating civil claims in state court. *Bryan* simply held that Public Law 280, in granting adjudicatory jurisdiction to the states, did not also grant the states jurisdiction to regulate and tax in Indian country. Any suggestion that the Public Law 280 jurisdiction of the state might not extend to civil suits brought by a tribe is refuted by *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Engineering, P.C.*, 476 U.S. 877, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986).

**7.** It clearly appears from the complaint that defendant Michael Johnson and his corporation, Michael R. Johnson, Inc., are non-Indians.

lidity, construction, or effect of the IRA, they do not, in our opinion, arise under federal law. "The federal nature of the right to be established is decisive—not the source of the authority to establish it."

642 F.2d at 279 (quoting, *Littell v. Nakai,* 344 F.2d 486, 488 (9th Cir.1965), *cert. denied,* 382 U.S. 986, 86 S.Ct. 531, 15 L.Ed.2d 474 (1986)). But *Boe* was an entirely internal dispute between a tribe and some of its members over the question whether a tribal ordinance of undisputed validity had been violated in an election. The complaint, in context, raised no federal claim.

In seeking to apply its ordinance to Michael Johnson and his corporation, however, the Village is not *prima facie* engaged in regulating its internal affairs. Instead, it is pressing "the outer boundaries of an Indian tribe's power over non-Indians[,]" which "federal law defines." *National Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. 845, 851, 105 S.Ct. 2447, 2451, 85 L.Ed.2d 818 (1985). It cannot be said, as it was in *Boe,* that the Village's claim against Johnson and his corporation will not depend on any disputed interpretation or application of federal law.

Lying as it does on the boundaries of tribal jurisdiction, this case is far more like *Knight v. Shoshone & Arapahoe Indian Tribes,* 670 F.2d 900 (10th Cir.1982), in which the Tenth Circuit held that a tribe's suit to enforce its land-use ordinance against non-Indians arose under federal law; the tribe's power under Federal law to regulate non-Indian use of fee land was a prime issue. Also comparable is *Confederated Salish & Kootenai Tribes v. Namen,* 665 F.2d 951 (9th Cir.), *cert. denied,* 459 U.S. 977, 103 S.Ct. 314, 74 L.Ed.2d 291 (1982), in which we entertained a similar claim without discussing jurisdiction.[8] In our case the state of the law is such that the heart of the controversy over the claim will be the Village's power, under federal law, to enact its ordinance and apply it to non-Indians.[9] Indeed, the meaning of the ordinance is barely open to dispute, but the Village's power under the federal statute or common law to enact and apply it is open to immense dispute. The State of Alaska placed in issue in district court questions whether the Village was a federally-recognized tribe, whether it ever had or ever could qualify as one, and whether it had any legislative jurisdiction in general or over the artifacts and defendants in particular. Alaska also stated that it was prepared to dispute the Village's contention that its fee lands were Indian country; Alaska further asserted that, even if they were, the Village thereby acquired or retained no legislative powers. These issues are not before us now, but they are federal questions and they lie at the heart of the Village's claim to enforce its ordinance.

The district court was of the view that these federal issues were entirely defensive matter, and consequently had to be disregarded in determining whether the Village's claim arose under federal law. *See Louisville & Nashville R.R. Co. v. Mottley,* 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297

---

**8.** As the district court here noted, there was a federal trespass claim in *Namen* that could have sufficed to support the other claims as pendent.

**9.** The federal question in the Village's complaint, like those in *Knight* and *Namen,* is central to its claim because the Village seeks to impose its public policy, embodied in its ordinance, on those outside of its community. To do so, it inevitably will have to establish its power, under federal common or statutory law, to do so. The Village's case is therefore entirely different from *Gila River Indian Community v. Henningson, Durham & Richardson,* 626 F.2d 708, 712 (9th Cir.1980), *cert. denied,* 451 U.S. 911, 101 S.Ct. 1983, 68 L.Ed.2d 301 (1981), in which the tribe simply sought to recover on a contract, according to the contract's terms. We dismissed for lack of federal question jurisdic-

tion. Similarly in *Begay v. Kerr–McGee Corp.,* 682 F.2d 1311 (9th Cir.1982), we held that there was no federal question jurisdiction for a pure tort suit brought by Indians against non-Indians, even though federal defenses might ultimately be asserted. Unlike the situation in a contract or tort case, the Village cannot make out its claim against the non-Indian defendants without establishing its federal power.

The fact that the Village's complaint seeks to exercise a federally-based power also differentiates this case from *Morongo Band of Mission Indians v. California State Bd. of Equalization,* 858 F.2d 1376 (9th Cir.1988). In *Morongo,* the tribe's original complaint in interpleader asserted no tribal interest of any kind; the tribe was a mere stakeholder. We held that the complaint did not arise under federal law.

(1911); *Phillips Petroleum Co v. Texaco, Inc.*, 415 U.S. 125, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974). The question is a close one, because some of the issues just listed *are* purely defensive. We conclude, however, that the Village's allegations of sovereign power, as a matter of federal statute and "reserved powers" (which could only be cognizable as a matter of federal common law), to apply its ordinance to Johnson and his corporation, bring this case within the rule of *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974). In that case, the Oneidas brought an action in ejectment, contending that they held aboriginal title to the lands in issue and that the conveyance by which the State or County held title had violated federal law. The lower courts held that the ejectment action arose under state law, and that the federal claims were purely defensive, negating jurisdiction in the federal courts. The Supreme Court reversed, holding that the possessory interest upon which the complaint depended— the original right of Indian occupancy— was a federally-founded interest upon which the complaint was fairly based. In our view, the Village's claim of the sovereign power to enact a valid ordinance, applicable to non-Indians regulating tribal artifacts on its fee lands is equally based on a disputed federal claim. The extent of the "reserved" power alleged by the Village is determined by federal common law, *see National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), and the extent of the Village's power under the IRA depends upon the construction of that federal statute. These federal issues, in our view, inhere in the complaint.[10] *See Oklahoma*

*ex rel. Oklahoma State Tax Comm'n v. Graham*, 846 F.2d 1258, 1260 (10th Cir.) (federal question, though not pleaded, inheres in complaint because defendant is sovereignly immune tribe), *cert. granted,* — U.S. —, 109 S.Ct. 53, 102 L.Ed.2d 32 (1988). It would be too technical, we believe, to focus only on the ultimate ordinance, which is not federal, and to ignore the necessity for the Village to prove its disputed federal power to enact and apply it to those outside of its community. We conclude, therefore, that the Village's claim against Johnson and his corporation arises under federal law.[11]

### V.

We reach a different conclusion with regard to the claim seeking to enforce the Village's ordinance against its own members or others whose Indian status may subject them to the internal jurisdiction of the Village. *See Duro v. Reina,* 851 F.2d 1136 (9th Cir.1988) (amended opinion) (nonmember Indians subject to criminal jurisdiction of reservation tribe). It is true that in some cases enforcement of a tribe's ordinance against its own members may raise federal issues of tribal power. Indeed, this may well be one of those cases. But we cannot accept the view that these federal questions *inhere* in a complaint by a tribe seeking to enforce its ordinance against its own members. In the overwhelming majority of instances, a tribe's enforcement of its ordinances against its members will raise no federal questions at all. *E.g., Boe v. Fort Belknap Indian Community,* 642 F.2d 276 (9th Cir.1981). Such cases primarily raise issues of tribal

10. When the shoe is on the other foot, and a non-Indian plaintiff challenges an exercise of tribal adjudicatory or legislative power as being contrary to federal common law, the claim arises under federal law for purpose of § 1331. *National Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985); *Cardin v. De La Cruz,* 671 F.2d 363 (9th Cir.) *cert. denied,* 459 U.S. 967, 103 S.Ct. 293, 74 L.Ed.2d 277 (1982).

11. We do not address the question, not discussed by the parties, whether this action is subject to any further requirements of exhaustion. *See National Farmers Union Ins. Cos. v.*

*Crow Tribe,* 471 U.S. at 856–57, 105 S.Ct. at 2453–54. An earlier action arising out of this same controversy was dismissed partly because the issues might better be addressed in a tribal forum. *Johnson v. Chilkat Indian Village,* 457 F.Supp. 384 (D.Alaska 1978). This action was later instituted, perhaps because tribal relief was not fully available. At the time that the Village enacted its disputed ordinance, it had no tribal courts. Since that time, the Village Council has authorized tribal courts, but the record reflects disagreement among the parties as to whether those courts are actually organized and able to entertain cases.

law, and they are the staple of the tribal courts. Nothing on the face of the Village's complaint tells us that this case is any different. We conclude, therefore, that the Village's claim for enforcement of its ordinance against its own members does not arise under federal law within the meaning of 28 U.S.C. §§ 1331 and 1362.[12]

 We also reject the Village's more sweeping argument that the ordinance itself was a federal law for purposes of 28 U.S.C. §§ 1331 and 1362. The Village's proposition is an exceedingly difficult one to uphold. *Boe v. Fort Belknap Indian Community*, 642 F.2d 276 (9th Cir.1981), is sufficient authority that the federal courts do not stand ready to entertain every case arising under a tribal ordinance, when there is no inherent and disputed federal question about the tribe's power to enact it. Moreover, the Village's contention goes against the grain of *United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978), in which the Supreme Court held that successive prosecutions under a tribal ordinance and a federal statute for the same offense did not violate the double jeopardy clause. That result could scarcely have followed if tribal ordinances were equivalent to federal laws. It is safe to say, therefore, that every claim based upon a tribal ordinance does not, ipso facto, arise under federal law.[13]

## VI.

Having concluded that the Village's claim to enforce its ordinance against Johnson and his corporation arises under federal law, we reverse the district court's dismissal of that claim. Because the district court's dismissal of the pendent state law claims was based on its dismissal of all anchoring federal claims, we also reverse

the district court's dismissal of those claims as to non-Indian defendants. We affirm the dismissal of claims against the Indian defendants and the dismissal of the entire claim based on 18 U.S.C. § 1163.

AFFIRMED IN PART; REVERSED IN PART; Each party to bear its own costs.

FERGUSON, Circuit Judge, dissenting:

I disagree with the majority's conclusions that (1) section 1163 does not provide a private right of action and (2) the Village's property right claims are merely state law claims which do not arise under federal law, and therefore dissent.

### I.

While the majority is correct in focusing on congressional intent to determine whether a private right of action can be implied here, its conclusion is not. Just because the legislative history contains no reference to providing a private remedy, does not mean this court could not—or should not—imply one. The courts have never required an *explicit* congressional directive—hence the creation of an *implied* private right of action doctrine.

In its most recent pronouncement on this issue, the Supreme Court presented a framework to use in cases such as this one where the statute is silent as to the establishment of a private right of action. In *Thompson v. Thompson*, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988), the Court stated that while legislative intent is the touchstone of the inquiry, focusing on intent

> does not mean that we require evidence that Members of Congress, in enacting the statute, actually had in mind the creation of a private cause of action. *The*

---

**12.** We are not presented with the question whether members of a tribe who challenge the tribe's power under federal law to enact or apply an ordinance may bring an action in federal court under 28 U.S.C. § 1331. Nor are we presented with the question of what exhaustion requirements might apply to such an action. *See Nat'l Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 853–57, 105 S.Ct. 2447, 2452–54, 85 L.Ed.2d 818 (1985).

**13.** The Village's insistence that its ordinance was itself a federal law was sometimes confused with its otherwise viable contention that its complaint was based on federal law empowering it to apply its ordinance against Johnson and his corporation. The Village did, however, vigorously assert the federal common-law and statutory bases of its power in its motion for summary judgment. We do not regard the Village's misguided argument regarding the federal nature of its ordinance to have effected a waiver of its jurisdictionally viable claim.

*implied cause of action doctrine would be a virtual dead letter were it limited to correcting drafting errors when Congress simply forgot to codify its evident intention to provide a cause of action. Id.* at ——, 108 S.Ct. at 523. Congressional " 'intent may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment.' " *Id.* (quoting, *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 18, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979)).

*Thompson* also affirmed the continuing vitality of the four factors enumerated in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), as a guide to discerning Congressional intent. *Thompson,* 484 U.S. at ——, 108 S.Ct. at 522; *see also In re Washington Pub. Power Supply Sys. Sec. Lit.,* 823 F.2d 1349, 1351 (9th Cir.1987) (en banc) (reversing previous Ninth Circuit decisions regarding implied rights of action in part because the *Cort v. Ash* analysis was not applied). In *Cort,* the Court identified these four criteria as:

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78, 95 S.Ct. at 2088 (emphasis in original; citations omitted). An application of the *Cort* analysis to the instant case

supports a finding of an implied right of action under section 1163.

That the first *Cort* factor is met is obvious from the language of the statute itself.[1] Section 1163 "expressly identifies the class Congress intended to benefit," *Compare Cannon v. University of Chicago,* 441 U.S. 677, 690, 99 S.Ct. 1946, 1954, 60 L.Ed.2d 560 (1979) *with California v. Sierra Club,* 451 U.S. 287, 294, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981) (refusing to find private right of action where statutory language "does not unmistakably focus on any particular class of beneficiaries whose welfare Congress intended to further") by protecting only "Indian tribal organizations" or their representatives. Moreover, this "class" is a uniquely identifiable group that has an historic relationship with Congress whereby Congress acts as fiduciary to the Indians. Since the specific class of beneficiaries includes the Village,[2] the first factor is easily resolved in their favor.

As to the second *Cort* factor, while the sparse legislative history makes "no allusion to [a] private remedy," the federal courts are permitted to fashion remedies as a matter of federal Indian common law. *See, e.g., County of Oneida v. Oneida Indian Nation,* 470 U.S. 226, 236, 105 S.Ct. 1245, 1252, 84 L.Ed.2d 169 (1985). Where " 'it is clear that federal law has granted a class of persons certain rights, it is not necessary to show an intention to *create* a private cause of action[.]' " *Cannon,* 441 U.S. at 694, 99 S.Ct. at 1956 (quoting *Cort,* 422 U.S. at 82, 95 S.Ct. at 2090) (emphasis in original). And though " 'an explicit purpose to *deny* such cause of action would be controlling,' " *compare id. with* Thompson, 484 U.S. at —— – ——, 108 S.Ct. at 518–19 (Court did not imply a private right of action because legislative history revealed that federal court enforce-

---

**1.** The statutory language creating the right has generally been the most accurate indicator of the propriety of implying a cause of action. *See Cannon,* 441 U.S. 690 n. 13, 99 S.Ct. at 1954 n. 13. ("With the exception of one case, in which the relevant statute reflected a special policy against judicial interference, this Court has never refused to imply a cause of action where the language of the statute explicitly conferred a right directly on a class of persons that included the plaintiff in the case."); *Accord Centel Cable*

*Television Co. of Florida v. Admiral's Cove Associates,* 835 F.2d 1359, 1362 (11th Cir.1988) ("Whenever a statute grants a specific right to a particular class of persons, the U.S. Supreme Court usually finds an implied right of action.").

**2.** Although the State of Alaska intervened below to place in issue the Village's status as a federally-recognized tribe, no findings were made on this point and the question was not raised on appeal.

ment was specifically discussed and rejected by Congress) in the instant case, there is nothing to suggest that Congress did *not* intend the federal courts to enforce section 1163 by private action.

The third *Cort* factor, which requires that the statute be consistent with the underlying purposes of the legislative scheme is also satisfied. When a private remedy is "necessary or at least helpful to the accomplishment of the statutory purpose, the Court is decidedly receptive to its implication under the statute." *Cannon*, 441 U.S. at 703, 99 S.Ct. at 1961. The legislative history of section 1163 states that

> [t]he purpose of this legislation is to protect Indian tribal organizations from the actions of dishonest and corrupt tribal officials and from others who embezzle or steal tribal funds or property.

H.Rep. No. 2427, 84th Cong., 2d Sess. 1 (1956). The House report also specified the need for *federal* safeguards to protect tribes from individuals "who commit these offenses involving tribal property." *Id.* at 2. Implication here of a private right, which is enforceable in federal court, would be entirely consistent with—and necessary to the fulfillment of—the express legislative purpose of protecting Indian tribal property.

Finally, the fourth *Cort* factor also points to an implied private right because the action does not involve a concern traditionally governed by state law. Historically, issues involving Indians have been "deemed beyond the legislative and judicial jurisdiction. of the state governments." *Three Affil. Tribes of Ft. Berthold v. Wold Engine*, 476 U.S. 877, 106 S.Ct. 2305, 2307, 90 L.Ed.2d 881 (1986). And though there has been occasional straying from this policy, the general preference of federal over state jurisdiction in Indian. matters is so well-established and widely accepted that it need hardly be discussed. *See, e.g., Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 669, 94 S.Ct. 772, 778, 39 L.Ed.2d 73 (1974); *Hughes v. Washington*, 389 U.S. 290, 292–93, 88 S.Ct. 438, 440, 19 L.Ed.2d 530 (1967); *Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 560, 8 L.Ed. 483 (1832).

Moreover, specific federal statutes have been enacted to preserve and protect Indi-

an tribal property. *See, e.g.,* 18 U.S.C. § 1163 (criminal sanctions for the theft or embezzlement of Indian tribal property); 16 U.S.C. § 470aa, et seq. (protection of archaeological resources removed from tribal lands). This demonstrates that the interests asserted by the Village involve concerns not "traditionally relegated to state law [or] an area basically the concern of the States," *Cort*, 422 U.S. at 78, 95 S.Ct. at 2088, but rather—like most issues involving Indian interests—involve matters traditionally governed by federal law.

Thus, applying the *Cort* analysis, there is no indication that Congress intended to preclude a private right of action under section 1163. To the contrary, the *Cort* inquiries support the finding of an implied right. *See Cheyenne–Arapaho Tribes of Oklahoma v. Beard*, 554 F.Supp. 1, 4 (W.D. Okla.1980) (private cause of action implicit in section 1163 because language and legislative history indicate congressional intent to protect Indian tribes from improper actions of tribal officials). Such a holding would effectuate congressional policy derived from a specific act of Congress and be consistent with implied rights of action jurisprudence.

## II.

I also disagree with the majority's conclusion that the Village's property right claims do not arise under federal law. I submit that the majority's characterization of the first and fifth causes of action as mere state law conversion claims that would presumably be adjudicated in state court is erroneous.

## A.

The Village's property right claims do in fact have a basis in federal law. As discussed above, Congress has made clear its commitment to protecting Indian property. *See, e.g.,* 18 U.S.C. § 1163, 16 U.S.C. § 470aa, et seq. This is consistent with the current federal policy of safeguarding tribal society as a whole in order to ensure Indian self-determination. *See* 25 U.S.C. § 450a(a) (noting "the obligation of the United States to respond to the strong expression of the Indian people for self-deter-

mination."). Tribal artifacts are central to cultural identity and the maintenance of a distinct tribal society. The Village · describes its communally-owned property as playing a central role in the "spiritual, cultural and social" practices of the Chilkat tribal members. Thus, these artifacts implicate important Indian and federal interests which provide a "federal foundation." Indeed, in an earlier action arising from a dispute involving the artifacts at issue here, *Johnson v. Chilkat Indian Village*, 457 F.Supp. 384 (D.Alaska 1978), the district court recognized this connection:[3]

> [T]he artifacts are regarded as having great significance to the culture and heritage of the Village. For example, the artifacts are used in funerals and other ceremonies of the residents. The "property" interests of the villagers and the efforts of the Village government to preserve its heritage are so entwined that any decision by this court as to the interest of the plaintiff would prejudice the Chilkat Indian Village Council.

*Id.* at 388.

Since the Village's claims involve federally-protected interests, they fall within the jurisdictional grant of 28 U.S.C. § 1362.

### B.

In addition to denying the existence of a federal foundation, the majority seems to presume that a state court would have jurisdiction to resolve this dispute.[4] But in order for states to exercise any degree of control over Indian affairs, there must be a specific jurisdictional grant by Congress. *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 107 S.Ct. 1083, 1087, 94 L.Ed.2d 244 (1987). Federal courts may only abandon their obligation to exercise jurisdiction in the extraordinary and narrow circumstances for which such a grant is made. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).[5] To date, there has been no explicit congressional grant of jurisdiction to the Alaska state courts for the adjudication of civil disputes over tribal personal property.[6]

Assumedly, the majority reaches its conclusion because 28 U.S.C. § 1360 confers civil jurisdiction on the states in certain actions in which Indians are parties.[7] The Supreme Court has construed section 1360

---

**3.** The district court dismissed on sovereign immunity grounds, an action brought by a former Village resident seeking to acquire possession and ownership rights to the artifacts against the Chilkat Indian Village Council. 457 F.Supp. at 387.

**4.** By labeling the Village's assertions as state conversion claims, the majority implies that a state court could resolve the issues raised in this action by determining the ownership of the artifacts.

**5.** This federal policy responds in part to Congress' recognition of the "great hesitancy on the part of tribes to use State courts." S.Rep. No. 1507, 89th Cong., 2d Sess. 2 (1966) (Report on 28 U.S.C. § 1362). The federal policy of leaving Indians free from state jurisdiction and control "is deeply rooted in our nation's history." *United States v. Adair*, 723 F.2d 1394, 1401 n. 3 (9th Cir.1983) (citing *McClanahan v. Arizona State Tax Commission*, 411 U.S. 164, 168, 93 S.Ct. 1257, 1260, 36 L.Ed.2d 129 (1973); *Rice v. Olson*, 324 U.S. 786, 789, 65 S.Ct. 989, 991, 89 L.Ed. 1367 (1945)). The principle that Indian tribes are subject only to the plenary power of Congress is applicable in all cases where essential tribal relations or rights of Indians are involved. *See Williams v. Lee*, 358 U.S. 217, 220–21, 79 S.Ct. 269, 270–71, 3 L.Ed.2d 251 (1959). I submit that this policy is especially applicable in cases brought by Indian tribes to enforce their possessory or ownership rights in tribal property.

**6.** Vital to any expectation of state jurisdiction over this dispute is Congress' enactment of Title IV of the Civil Rights Act of 1968 which amended § 1360's jurisdictional grant to the states. The relevant portion of that Act, codified at 25 U.S.C. § 1322, makes state jurisdiction conditional upon "the receipt of tribal consent" to state jurisdiction. *Three Affiliated Tribes of Fort Berthold v. Wold Engineering*, 476 U.S. 877, 106 S.Ct. 2305, 2311, 90 L.Ed.2d 881 (1986). "The impetus for the addition of a consent requirement in the 1968 Amendments was congressional dissatisfaction with the involuntary extension of state jurisdiction over Indians who did not feel they were ready to accept such jurisdiction, or who felt threatened by it." *Id.* at 892, 106 S.Ct. at 2314 (citations omitted). "Tribal consent" requires a special election in which a majority of the adult Indians enrolled with the tribe vote in favor of state jurisdiction. 25 U.S.C. § 1326.

**7.** 28 U.S.C. § 1360(a) provides:

as having been "primarily intended to redress the lack of adequate Indian forums for resolving private legal disputes between reservation Indians, and between Indians and other private citizens, by permitting the courts of the States to decide such disputes[.]" *Bryan v. Itasca County,* 426 U.S. 373, 383, 96 S.Ct. 2102, 2108, 48 L.Ed.2d 710 (1976). However, this jurisdictional grant is limited [8] and it appears that the Village would not fall within its parameters.

First, section 1360 applies to disputes involving individual Indians rather than Indian tribes. As the Supreme Court recognized, "there is notably absent any conferral of state jurisdiction over the *tribes* themselves." *Id.* at 389, 96 S.Ct. at 2111 (emphasis added).

Second, even if actions by tribes themselves were subject to section 1360(a) state jurisdiction, this general grant is qualified by the limiting language of section 1360(b). Section 1360(b) specifically reserves to the federal courts jurisdiction over, *inter alia,* any adjudication of ownership or right to possession of personal property belonging to any Indian or Indian tribe which is subject to a restriction against alienation imposed by federal law.[9]

The Village, in its complaint, asserts it is a duly recognized Indian tribe, with a paramount possessory interest in wrongfully transferred personal property—the artifacts. Arguably, these artifacts are subject to a "restriction against alienation imposed by the United States" because 18 U.S.C. § 1163 specifically protects the ownership and possessory rights of an Indian tribe in its property from unlawful transfer or conversion. Under the provision of section 1360(b) such a restriction could preclude state courts from asserting jurisdiction over the Village's claims.

In addition, the Alaskan Supreme Court has affirmed that Alaska state courts will not accept jurisdiction to adjudicate rights to possession or ownership of interests in property subject to 1360(b). *See Ollestead v. Native Village of Tyonek,* 560 P.2d 31, 33 (Alaska 1977); *see also State of Alaska, Dept. of Public Works v. Agli,* 472 F.Supp. 70, 72 (D.Alaska 1979). If the Alaska courts found the artifacts here at issue subject to section 1360(b), the majority's ruling would leave the Village with no forum in which to adjudicate its claims. Congress could not possibly have intended such an inequitable result.

In summary, the district court erred in dismissing the Village's first and fifth causes of action. Preservation of the Village's cultural identity and tribal society is an Indian interest that has been "shaped and protected by federal common law" and reinforced by federal statutes, and thus subject to federal court jurisdiction under 28 U.S.C. § 1362. Where, as here, Congress has not surrendered jurisdiction to the states, the federal courts have a "virtu-

---

Each of the States or Territories listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over other civil causes of action, and those civil laws of such State or Territory that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory:

\* \* \* \* \* \*

Alaska ........... All Indian country within the Territory ...

**8.** For example, this circuit, in *Santa Rosa Band of Indians v. Kings Co.,* 532 F.2d 655 (9th Cir. 1975), held that § 1360's jurisdictional grant did not extend to county or municipal governments so as to render Indians subject to local ordinances. The court noted that the meaning of

§ 1360's language can only be properly determined in the context of the "substantial backdrop of Indian legislation and policy." *Id.* at 661; *accord, Three Affiliated Tribes,* 476 U.S. at 884, 106 S.Ct. at 2310.

**9.** 28 U.S.C. § 1360(b) provides:

Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property, including water rights, belonging to any Indian or any Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute or with any regulation made pursuant thereto; or shall confer jurisdiction upon the State to adjudicate, in probate proceedings, or otherwise, the ownership or right to possession of such property or any interest therein.

ally unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. U.S.,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) (citing *England v. Medical Examiners,* 375 U.S. 411, 415, 84 S.Ct. 461, 464, 11 L.Ed.2d 440 (1964)). I therefore dissent.