**Dr. Peter J.H. WALKER, et al., Plaintiffs,**

v.

**B.L. BENTER, et al., Defendants.**

**No. CV 95–6777–CAS (SHx).**

United States District Court, C.D. California, Western Division.

Feb. 1, 1999.

---

Dr. Peter J.H. Walker, Lucia R. Walker, Las Vegas, NV.

Martin Ageson, Deputy Attorney General, Los Angeles, CA.

Kinkle Rodiger & Spriggs, Bruce Disenhouse, Riverside, CA.

ORDER RE: (1) PLAINTIFFS' MOTION FOR LEAVE TO AMEND; (2) DEFENDANT TRASK'S MOTION FOR SUMMARY JUDGMENT; (3) STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PETER WALKER; (4) STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST LUCIA WALKER

SNYDER, District Judge.

Before the Court are four motions: (1) plaintiffs Peter Walker and Lucia Walker's motion for leave to amend the complaint; (2) defendant Grover Trask's ("Trask") motion for summary judgment; (3) defendants B.L. Benter, Douglas L. Earnest, and Andrew Van Veen's (the "State defendants") motion for summary judgment against plaintiff Peter Walker; and (4) the State defendants' motion for summary judgment against plaintiff Lucia Walker.

## I. PROCEDURAL BACKGROUND

Dr. Peter Walker ("Dr.Walker") and his spouse, Lucia Walker ("Mrs.Walker"), filed an action for use of excessive force, assault and battery, unlawful search, false arrest, malicious prosecution, "vindictive prosecution," taking of property without due process of law, negligence, and gross negligence. On May 19, 1997, Judge William Keller granted the defendants' motion to dismiss plaintiff's claims for relief in part. The remaining claims for relief are: (1) a claim of excessive force against the State defendants; and (2) a claim of "vindictive prosecution" against defendant Trask.

Judge Keller recused himself on August 24, 1998, and the case was randomly assigned to this Court.

## II. FACTUAL BACKGROUND

On October 11, 1994, plaintiffs were traveling on Interstate 15 in Riverside County. Several California Highway Patrol ("CHP") vehicles approached plaintiffs' car with their lights flashing. First Amended Complaint, ¶ 14. Plaintiffs pulled the car to the side of the road, and the CHP officers walked toward the vehicle with their weapons drawn. *Id.*, ¶ 16. Through a loudspeaker, the officers instructed plaintiffs to roll down their windows and place their hands on the windshield of the car. *Id.*, ¶ 17. Both plaintiffs were instructed to exit the vehicle with their arms raised and walk backwards towards the officers. *Id.*, ¶ 18. Defendant Benter grabbed Dr. Walker's hands and handcuffed them behind him. A blue-uniformed police officer told Dr. Walker that the CHP had received a 911 telephone call

from a motorist on Interstate 15 who stated that the passenger, an Asian woman, had pointed a gun at the motorist. *Id.*, ¶ 19. Dr. Walker was then frisked.

Defendant Van Veen handcuffed Mrs. Walker and frisked her. *Id.*, ¶ 21. Each plaintiff was placed in the back seat of a different CHP vehicle. The officers then searched plaintiffs' car. *Id.*, ¶ 22. After searching the passenger compartment, the officers asked Dr. Walker about the gun. Dr. Walker alleges that Officer Benter told him that "the female admitted you have a gun." *Id.* Dr. Walker told the officer that he had a small pistol in a suitcase in the trunk of the car. *Id.* Defendant Earnest unlocked the trunk of the vehicle. Benter, Van Veen, and Earnest then searched the trunk of plaintiffs' vehicle. The officers removed Dr. Walker's suitcase, opened the suitcase, and removed and seized Dr. Walker's gun.

Plaintiffs allege that they were kept in a "highly uncomfortable and contorted condition" in the rear of the police vehicles with the windows rolled up in the hot sun, for an extended period, estimated to be over an hour. *Id.*, ¶ 24.

The officers charged Dr. Walker with the misdemeanor of transporting a loaded gun and released him. The officers arrested Mrs. Walker. *Id.*, ¶ 26. Plaintiffs allege that Officer Benter filed a "biased report" entitled "Arrest–Investigation Report," which contained false statements. *Id.* Plaintiffs further allege that the Riverside County District Attorney, Grover Trask, was persuaded to file felony charges against Lucia Walker based upon the untrue report. *Id.*

On January 25, 1995, Trask filed an additional felony charge against Dr. Walker. Plaintiffs allege that this felony charge was filed as retaliation for a letter sent by Dr. Walker. *Id.*, ¶ 29. On March 31, 1995, the Riverside County Superior Court dismissed all charges against both plaintiffs.

### III. *PLAINTIFFS' MOTION TO AMEND*

#### A. *Standard for Motion to Amend*

Federal Rule of Civil Procedure 15(a) provides that if a responsive pleading has already been served, the "party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Within the Ninth Circuit, this rule "is to be applied extraordinary liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990). "Where there is lack of prejudice to the opposing party and the amended complaint is obviously not frivolous or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny such motion." *Hurn v. Retirement Fund Trust of Plumbing, Heating & Piping Industry of So. Calif.*, 648 F.2d 1252, 1254 (9th Cir.1981) (citations omitted).

The Ninth Circuit has identified four factors to consider in determining the propriety of a motion for leave to amend: "(1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party." *Id.* at 1254. Delay alone is not sufficient grounds for denying leave to amend. *See Howey v. United States*, 481 F.2d 1187, 1190–91 (9th Cir.1973) (holding that a five year delay alone was not sufficient grounds to deny a motion for leave to amend).

#### B. *Plaintiffs' Motion for Leave to Amend*

Plaintiffs' proposed amendments at this late date appear to be largely futile, and would cause prejudice to the opposing parties in this case. In addition, the motion for leave to amend appears to be inexcusably late.

Plaintiffs seek to add the following to their complaint:

(1) A negligence cause of action for the State defendants' alleged negligence in deciding whether or not to believe

the woman who accused the plaintiffs (Motion to Amend at 4–5);

(2) An additional defendant, Sergeant Lawrence, and allegations of negligence based on his alleged signing of Benter's report (*Id.*);

(3) New parties (three Riverside District Attorneys) and a renewed cause of action for the loss of Dr. Walker's gun (*Id.* at 5–6);

(4) Allegations that plaintiffs were pulled from their car at gunpoint and handcuffed (*Id.* at 4);

(5) Allegations that defendant Van Veen groped Mrs. Walker while frisking her (Proposed Second Amended Complaint, ¶¶ 14, 16, 31);

(6) Allegations that Dr. Walker's tendon was torn while he was being handcuffed (*Id.*, ¶¶ 28, 31).

This Court previously dismissed several claims of plaintiffs' first amended complaint on May 19, 1997.[1] The Court also issued an order on November 24, 1997, setting January 26, 1998, as the last date for plaintiffs to amend the pleadings to add additional parties. Plaintiffs initially filed a request for leave to file a second amended complaint in December 1997, and subsequently withdrew this motion. Defendant Trask filed his motion for summary judgment on March 27, 1998, followed by the filing of the State defendants' motions for summary judgment on March 31, 1998. Plaintiffs filed the present motion for leave to amend on April 9, 1998.

■■■ As an initial matter, plaintiffs' request to add new parties is untimely. "Once the district court enters a scheduling order setting forth a deadline for the amendment of pleadings, modifications are allowed only upon a showing of 'good cause.'" *See* Fed.R.Civ.P. 16(b); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir.1992). Under this standard, the court must consider the party's diligence in seeking the amendment. *Id.* at 609–610. Plaintiffs were previously given an opportunity to add new defendants prior to the date ordered by the Court, and failed to do so. Plaintiffs have not demonstrated good cause for their delay in adding such parties, and have provided no explanation for the delay. The court therefore will not allow the addition of four new defendants, including Randal Tagami, Wayne Austin, Joe Cohen, and Sergeant Lawrence, nor any claims against these defendants.

■■■ Many of the additional allegations sought by plaintiffs do not need to be added to the complaint in order to support plaintiffs' claims. For example, the allegations concerning the nature of the arrest, including the extent of injuries suffered by Dr. Walker, would be admissible as evidence supporting plaintiffs' excessive force claim, and there is no need to add such allegations to the complaint.

■■■ In addition, plaintiffs previously had notice of many of the new facts they seek to add. "[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. International Ass'n of Machinists*, 781 F.2d 1393, 1398 (9th Cir. 1986). For example, the facts relating to the alleged groping of Mrs. Walker were known to her at the time of the incident, before this litigation was filed.[2] Similarly, the alleged facts relating to the injuries suffered by Dr. Walker were known long before the current motion was filed.

Defendants filed motions for summary judgment on March 27, and 31, 1998.

---

1. Plaintiffs filed a Motion for Reconsideration of this order, which was denied on August 7, 1997.

2. Even if the Court allowed Mrs. Walker to add a claim for relief based on the alleged groping, this claim would be futile. Section 1983 does not provide a remedy for state law claims which do not rise to the level of constitutional violations. *See Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). In addition, Mrs. Walker's state law tort claims would be barred by the one year statute of limitations.

Plaintiffs filed the motion to amend on April 9, 1998. Plaintiffs' motion therefore appears to be an attempt by plaintiffs to defeat the pending motions for summary judgment. As the Ninth Circuit has held, "[a] motion for leave to amend is not a vehicle to circumvent summary judgment." *Schlacter–Jones v. General Tel. of Calif.*, 936 F.2d 435, 443 (9th Cir.1991).

Finally, the discovery cut-off in this case has passed, and trial was originally set for June 18, 1998.[3] The Court finds that permitting plaintiffs leave to amend the complaint at this stage would unreasonably prejudice the defendants.

For the reasons stated above, plaintiffs' motion for leave to amend is denied.

## IV. *MOTIONS FOR SUMMARY JUDGMENT*

### A. *Summary Judgment Standard*

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. *See* Fed.R.Civ.P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). *See also Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment must be granted for the moving party if

the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. *See also Abromson v. American Pac. Corp.*, 114 F.3d 898, 902 (9th Cir.1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 & n. 3 (9th Cir.1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted); *Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.*, 121 F.3d 1332, 1335 (9th Cir.1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. *See Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

### B. *Defendant Trask's Motion for Summary Judgment*

Defendant Grover Trask is the District Attorney of Riverside County. Trask argues that summary judgment is appropriate because of the lack of any triable issue of fact relating to plaintiffs' "vindictive prosecution" cause of action against him. The Ninth Circuit has held that Section 1983 claims may not rest on a theory of respondeat superior. *See Palmer v. Sanderson*, 9 F.3d 1433, 1438 (9th Cir.1993). Trask presents evidence showing that he had no direct involvement in the criminal prosecution of the Walkers, including the decision to augment charges against Dr. Walker. In his declaration, Trask states that other than receiving a letter from Dr.

---

**3.** This trial date was vacated due to the transfer of the case.

Walker, reviewing it, and referring it to the assistant in charge of the case, he had no involvement in the case. Trask Declaration, ¶ 4–8.

■ Plaintiffs point to no evidence showing that Trask had any personal involvement in the decisions surrounding the prosecution of plaintiffs, or the decision to augment charges against Dr. Walker. Plaintiffs' argument appears to be simply that because Trask admits to having received a letter from Dr. Walker prior to the filing of felony charges against Dr. Walker, there is a question of fact as to Trask's personal involvement. However, there is no evidence to back up this tenuous inference. Instead, the evidence presented by the defendant directly contradicts any inference of involvement.

Dr. Walker's deposition testimony makes clear that plaintiffs have no evidence tending to show that Trask had any personal involvement in the prosecution of plaintiffs. Dr. Walker admits that Trask was named as a defendant not based on knowledge or belief of personal involvement, but rather because of Trask's position as the District Attorney.

Q: What facts do you have, sir, to support your allegation that Grover Trask—Grover Trask acted in apparent anger at plaintiffs?

A: I would like to qualify that section of the complaint prior to giving you an answer. I see what you are driving to. That complaint named Grover Trask because he is the— head of that specific department. he is the District Attorney. And, consequently, the buck stops there. Whether Grover Trask personally had the knowledge or not, I don't know. If he did not have personal knowledge, he should have because he should supervise. If he did not have personal knowledge because it did not reach his desk, then these additional people who work for him, under his [sic] as deputies at various levels will be the ones who will be named as defendants, either in addition or instead of Grover Trask personally.

· · · · ·

Q: Okay. Now, with regard to Grover Trask, do you have any specific facts that he acted in anger?

· · · · ·

A: I don't know Grover Trask. I have no knowledge whether he has personally acted or ordered to file those charges, but he has been named as defendant because he is the head of that department.

· · · · ·

Q: So the answer to my question is then, no, you don't have any direct knowledge of Grover Trask acting in anger against you?

A: Personally, that is correct.

Deposition of Peter Walker, at 13–17.

■ Even if plaintiffs were able to demonstrate that defendant Trask was involved in the decision to bring charges against them, Trask would be entitled to absolute immunity. It is well-established that prosecutors enjoy absolute immunity for decisions to prosecute as well as for prosecuting a case. *Imbler v. Pactman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). In addition, the Ninth Circuit has held that a prosecutor is entitled to absolute immunity for any quasi-judicial actions taken within the scope of the prosecutor's authority. *Ashelman v. Pope,* 793 F.2d 1072, 1076 (9th Cir.1986) The intent of the prosecutor when performing prosecutorial acts plays no role in the immunity inquiry. *McCarthy v. Mayo,* 827 F.2d 1310, 1315 (9th Cir.1987).

Given the lack of evidence showing any direct involvement of Trask in the prosecution of plaintiffs, and the fact that Trask is immune from suit, defendant Trask's motion for summary judgment against plaintiffs Dr. Walker and Mrs. Walker is granted.

## C. State Defendants' Motion for Summary Judgment Against Dr. Peter Walker

The State defendants argue that the evidence shows that the police officers acted constitutionally, and that no evidence to the contrary has been produced.

■ Any action brought under Section 1983 must involve the deprivation of a right specifically arising under either the Constitution or a federal statute creating such right. *Baker v. McCollan,* 443 U.S. 137, 142–147, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). This Court has already determined that probable cause existed for the felony stop/arrest and that the only cause of action remaining against the State defendants under Section 1983 is for the alleged use of excessive force against the plaintiffs.

The Supreme Court established in *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), that excessive force cases involving non-prisoners are subject to the "objective reasonableness" standard of the Fourth Amendment. "All claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a substantive due process' approach." *Id.* at 395, 109 S.Ct. 1865.

■ Applying the reasonableness standard of the Fourth Amendment involves making an objective assessment of the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396, 109 S.Ct. 1865 (internal quotations omitted). As the Supreme Court explained:

> Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it .... [Application of the] test of reasonableness ...

requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id.* at 396–397, 109 S.Ct. 1865.

Here, according to the evidence presented, the police received a cellular phone call from a motorist, who stated that another motorist had pointed a handgun at her. State Defendants' Motion for Summary Judgment, Exhibit A at 33–38. The police then stopped plaintiffs' car, which matched the description given by the motorist. *Id.* Upon stopping the car, the officers performed a "felony stop." *Id.* at 33. Dr. Walker states in his declaration that Officer Benter had his gun drawn and ordered Dr. Walker, at gunpoint, to exit the car, turn around, and walk backwards. Walker Decl., ¶¶ 10–11. Benter then yelled at another officer, grabbed Dr. Walker's hands by the wrists, twisted his arms behind his back, and handcuffed him. According to Dr. Walker, the handcuffing procedures caused him great pain. *Id.,* ¶¶ 11–13. Benter then grabbed Dr. Walker's arm, roughly guided him to a parked patrol car, and pushed him into the back seat, where he was forced to sit in an awkward position. *Id.,* ¶ 15. Dr. Walker states that the windows on the car were rolled up, and the interior of the car became extremely hot and uncomfortable, and Benter would not roll down a window despite Dr. Walker's requests. Id., ¶¶ 17, 18, 22.

■ This evidence is insufficient, as a matter of law, to establish a Fourth Amendment excessive force claim. Given the exigencies of the situation, performing a felony stop cannot be said to constitute excessive force. Pointing their guns at Dr. Walker, ordering him to exit his car, turn around, or walk backwards, and yelling to other officers does not constitute the use of excessive force by the defendant officers. Similarly, frisking, handcuffing, and

detaining Dr. Walker in a closed police car does not constitute excessive force. The only remaining issue is whether the manner of performing the felony stop, according to the evidence provided, could reasonably be found to be excessive force.

"[A]lthough reasonableness is normally a jury question, 'defendants can still win on summary judgment if the district court concludes after resolving all facts in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances.'" *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1322 (9th Cir. 1995). In his declaration filed in opposition to the motion for summary judgment, Dr. Walker states that the handcuffing procedure, and placement and detainment in the police car caused him great pain and discomfort. According to the evidence presented, Dr. Walker's injuries due to the allegedly excessive force applied by the defendants, may amount to a torn tendon. However, Dr. Walker's only evidence of such injury is based on his own statements; he has presented no evidence of medical diagnosis or care relating to such injuries.[4] Given the lack of evidence showing any egregious use of force in conducting the stop, or showing any substantial injury suffered due to such alleged force, the Court finds that no reasonable jury could find, based on the evidence present-

ed, that the defendant officers violated Dr. Walker's rights under the Fourth Amendment by using excessive force.

The State defendants also raise the defense of qualified immunity. The inquiry for determining whether officers are entitled to qualified immunity for a violation of the Fourth Amendment requires a two-part analysis: "(1) Was the law governing the official's conduct clearly established? (2) Under that law, could a reasonable officer have believed the conduct was lawful?" *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir.1993) (citations omitted).[5] In the instant case, plaintiffs do not point to the violation of any specific clearly established right, but refer to violations of a general right to be free from excessive force. Even if the Court were to accept a generalized allegation of a constitutional violation, the facts in this case support the finding that the officers are entitled to qualified immunity. As described above, the officers were responding to an emergency call, where allegations had been made that a passenger was brandishing a gun on a highway. Plaintiffs' car met the description provided by the alleged victim, including the license plate. This Court has already determined there was probable cause for the stop and arrest of plaintiffs. Based on the descrip-

---

4. The First Amended Complaint states that Dr. Walker suffered "muscular strain to right shoulder." First Amended Complaint, ¶ 35. In response to defendants' interrogatory asking whether he sought medical treatment following the incident, Dr. Walker stated:

> No physician rendered treatment. Dr. Norman Engel, D.C. ... ordered diagnostic sonography which disclosed the thorn [sic] tendon. I did not seek treatment due to lack of insurance coverage. Ultrasound scan, recently performed in response to these interrogatories, confirmed that the continuing pain and my reduced ability to fully use the right arm, are both due to this old injury. The injury appears to be permanent.

Exhibit F to Defendants' Motion for Summary Judgment Against Peter Walker. During his deposition, Dr. Walker stated that he would provide documentation to support his injury. However, from the record before the Court, it does not appear that these records

have ever been produced. Therefore, plaintiff has produced no evidence beyond his own claims to support his claim of a torn tendon.

5. Because the inquiry into qualified immunity requires an analysis of the reasonableness of the officers' actions, at least one Ninth Circuit case has held that a separate analysis of qualified immunity is not required in excessive force cases. *See Hopkins v. Andaya*, 958 F.2d 881, 885 (9th Cir.1992) ("In Fourth Amendment unreasonable force cases, unlike in other cases, the qualified immunity inquiry is the same as the inquiry made on the merits.... For this reason, we do not consider the qualified immunity issue separately in this case.") However, other Ninth Circuit cases have made the distinction between the substantive claim and the qualified immunity defense. *See Alexander*, 64 F.3d at 1322. This Court will address each issue separately, although both require an analysis of the same facts.

tion of the facts described, the manner in which officers carried out the arrest was reasonable. The officers reasonably believed that plaintiffs could be dangerous, and took measures to protect themselves. "Officers are entitled to qualified immunity even if they acted unconstitutionally, as long as a reasonable officer could have believed the conduct lawful." *Alexander*, 64 F.3d at 1322. Based on these facts, plaintiffs have failed to meet burden of showing that the officers, acting reasonably, should have known that they were violating a "clearly established law." The State defendants therefore, are entitled to qualified immunity.

D. *State Defendants' Motion for Summary Judgment Against Defendant Lucia Walker*

The State defendants also bring a motion for summary judgment against plaintiff Lucia Walker. As described in the motion for summary judgment against Dr. Walker, the general procedures used, such as drawing guns and instructing Mrs. Walker to exit her vehicle and walk backwards, do not constitute excessive force. Therefore, the only basis upon which Mrs. Walker may show a Fourth Amendment violation is the manner in which the felony stop was performed by the State defendants.

 The evidence presented by the State defendants shows that no Fourth Amendment violation was committed against Mrs. Walker during the felony stop. In her deposition, Mrs. Walker describes the handcuffing:

Q: Can you describe how he went about handcuffing you?

A: He grabbed my both hands and put them back behind me.

Q: And when he had your hands behind your back, if I understand you correctly, the palms were facing out? Do you remember?

A: Excuse me?

Q: Were your palms facing out when you were handcuffed behind your back?

A: Yeah, like that.

. . . . .

Q: Did it hurt to have your arms put behind your back?

A: It was for the first time.

Q: It hurt?

A: It hurt me a little bit.

Q: Where did it hurt when you were having your handcuffs ... Where were you feeling pain during the time while your hands were being handcuffed behind you? Let's start with that time period. Did you feel any pain, and if so, where?

A: Pain in the shoulder, down to the bottom, by being handcuffed like this.

. . . . .

Q: Any other areas that were caused pain during the handcuffing?

A: Nothing.

Deposition of Lucia Walker at 78–80.

Defendants also note that Mrs. Walker stated that "she did not suffer any physical injuries" in her answer to defendants' interrogatory No. 1. In addition, Mrs. Walker stated that she has not received any medical treatment in her answers to interrogatories 1 and 2. Exhibit E to State Defendants' Motion for Summary Judgment Against Lucia Walker.

This evidence appears to show, at most, discomfort due to being handcuffed. However, this discomfort does not amount to the type of injury sufficient to show excess force. Based on the evidence before the Court, the manner in which the state defendants conducted Mrs. Walker's arrest did not amount to excessive force. The State defendants, motion for summary judgment against plaintiff Lucia Walker is therefore granted.

IT IS SO ORDERED.