**MORONGO BAND OF MISSION INDIANS,**
**Plaintiff-counter-defendant/Appellant,**

v.

**Frank ROSE; Clive "Sonny" Miller,**
**Defendants-counter-plaintiffs/Appellees.**

No. 86–6350.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 7, 1988.

Withdrawn from Submission May 10, 1988.

Resubmitted June 1, 1989.

Decided Jan. 10, 1990.

George Forman, Berkeley, Cal., for plaintiff-counter-defendant/appellant.

David Grosz, Fleishman, Fisher and Moest, Los Angeles, Cal., for defendants-counter-plaintiffs/appellees.

Before BROWNING, NELSON and CANBY, Circuit Judges.

CANBY, Circuit Judge:

The Morongo Band of Mission Indians (The Band) brought this action in district court to enforce its ordinance regulating bingo games on its reservation. The defendants were Miller, an Indian and member of the Band, and Rose, a non-Indian. The complaint alleged that Miller and Rose were conducting unauthorized bingo games on Miller's allotted land within the reservation. The district court dismissed for lack of jurisdiction, holding that the claim did not arise under federal law. *See* 28 U.S.C. §§ 1331, 1362. The Band moved for reconsideration, and for leave to file an amended complaint. The district court denied both motions, and the Band appealed.

After hearing argument, we deferred submission of this case pending our decision in *Chilkat Indian Village v. Johnson*, 870 F.2d 1469 (9th Cir.1989). After *Chilkat* was decided, the Band stipulated to dismissal of its appeal as to defendant Miller. Both parties then submitted supplemental briefs on the effect of *Chilkat* on the claim against Rose.

*Issues*

The following issues remain for decision:
(1) Does the Band's action to enforce its ordinance against the non-Indian defendant, Rose, arise under federal law?
(2) Did the district court abuse its discretion in denying the Band leave to amend its complaint to state additional federal claims?

Our answer to the first question is "yes"; to the second, "no."

*Factual Background*

The Band is a federally recognized Indian tribe occupying and governing the Morongo Indian Reservation. Miller, one of its members, is beneficial owner of an allotment of land within the reservation. In 1982, Miller and a partner named Justus proposed an agreement with the Band under which Miller and Justus would operate a tribal bingo enterprise on Miller's allotted land. The proposal was approved at a tribal election. At the same election, the Band voted to enact a tribal ordinance authorizing bingo games conducted by the Band and prohibiting private bingo operations, with certain exceptions for charities.

The lease between the Band and Miller and the management agreement between the Band and Justus were never approved by the Secretary of the Interior. *See* 25 U.S.C. § 81; *A.K. Management Co. v. San Manuel Band of Mission Indians*, 789 F.2d 785 (9th Cir.1986).[1] The tribal bingo

---

**1.** There is some dispute between the parties concerning the applicability of 25 U.S.C. § 81 to these contracts, and the possible applicability of other sections that might require secretarial ap-

operation went forward, and was conducted on Miller's allotment from May 1983 until February 1984. At that time, the Band terminated the relationship with Miller and Justus, and thereafter opened a new tribal bingo operation elsewhere on the reservation, under contract with a different operator.

In August 1984, Miller and his new non-Indian partner, Rose, announced that they were going to reopen bingo operations on Miller's allotment. The Band informed them that the tribal ordinance prohibited such operations, but they began anyway. The Band, which has no tribal court, then brought this action in district court to enforce the ordinance against Miller and Rose.

*Federal Jurisdiction*

■■■ For jurisdiction to lie under 28 U.S.C. §§ 1331 and 1362, the action must arise under the Constitution, laws or treaties of the United States. An ordinance enacted by a federally recognized Indian tribe is not itself a federal law; the mere fact that a claim is based upon a tribal ordinance consequently does not give rise to federal question jurisdiction. *Boe v. Fort Belknap Indian Community*, 642 F.2d 276, 279 (9th Cir.1981). Nor does it suffice that one of the parties to a dispute is an Indian tribe. *Gila River Indian Community v. Henningson, Durham, & Richardson*, 626 F.2d 708, 714 (9th Cir. 1980), *cert. denied*, 451 U.S. 911, 101 S.Ct. 1983, 68 L.Ed.2d 301 (1981).

■■■ Here, however, we have an Indian tribe seeking to enforce one of its ordinances against a non-Indian. We faced a comparable claim in *Chilkat Indian Village v. Johnson*, 870 F.2d 1469 (9th Cir. 1989). In *Chilkat*, the tribe brought an action in district court to enforce its ordinance against the sale or removal of certain tribal artifacts. One of the defendants was a non-Indian art dealer, and another

defendant was his corporation. The remaining defendants were Indians, largely or entirely members of the plaintiff tribe.

We held that the tribe's claim for enforcement of its ordinance against the non-Indian defendants arose under federal law, within the meaning of 28 U.S.C. §§ 1331 and 1362. We stated:

> In seeking to apply its ordinance to Michael Johnson and his corporation, ... the Village is not *prima facie* engaged in regulating its internal affairs. Instead, it is pressing "the outer boundaries of an Indian tribe's power over non-Indians[,]" which "federal law defines."

*Id.* at 1474 (quoting *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 851, 105 S.Ct. 2447, 2451, 85 L.Ed.2d 818 (1985)); *see also Knight v. Shoshone & Arapahoe Indian Tribes*, 670 F.2d 900 (10th Cir.1982) (tribes' suit to enforce its land-use laws against non-Indians arose under federal law).

We believe that this ruling of *Chilkat* is applicable here. In attempting to enforce its ordinance against Rose, a non-Indian, the Band necessarily invokes its sovereign power and relies on its disputed ability, under principles of federal common law, to apply that power against one outside of its community.[2] *See Chilkat*, 870 F.2d at 1474 & n. 9. The federal question of the Band's power inheres in its complaint. *Id.* at 1475.

Rose argues that his case is more like that of the Indian defendants in *Chilkat*. With regard to those defendants, we reached an entirely different conclusion. We stated:

> [W]e cannot accept the view that these federal questions *inhere* in a complaint by a tribe seeking to enforce its ordinance against its own members. In the overwhelming majority of instances, a tribe's enforcement of its ordinances against its members will raise no federal questions at all. *E.g., Boe v. Fort Belk-*

---

proval of the contracts. These questions are not material to the jurisdictional decision, and we do not address them.

**2.** We include within the Band's community all those who, by reason of their Indian status, are subject to the internal jurisdiction of the Band.

*See Duro v. Reina*, 851 F.2d 1136, 1143 (9th Cir.1988) (amended opinion) (nonmember Indians subject to criminal jurisdiction of reservation tribe), *cert. granted*, —— U.S. ——, 109 S.Ct. 1930, 104 L.Ed.2d 402 (1989).

*nap Indian Community*, 642 F.2d 276 (9th Cir.1981). Such cases primarily raise issues of tribal law, and they are the staple of the tribal courts.... We conclude, therefore, that the Village's claim for enforcement of its ordinance against its own members does not arise under federal law within the meaning of 28 U.S.C. §§ 1331 and 1362.

*Chilkat*, 870 F.2d at 1475–76 (emphasis in original) (footnote omitted).

■ Rose's contention is that the tribe's claim against him is similarly a matter of internal affairs, raising no federal question.[3] He points out that in *Chilkat*, the Village was seeking to enforce its ordinance against a non-Indian located outside the Village, while here the Band is attempting to regulate Rose's activity within its reservation.

Rose's distinction does not stand up. In *Chilkat*, the non-Indian defendant had caused the artifacts to be removed from the Village; the subject of regulation was clearly internal. Yet a substantial federal question underlay the Village's exercise of power over the non-Indian. Similarly, in *Brendale v. Confederated Tribes and Bands of Yakima Indian Nation*, —— U.S. ——, 109 S.Ct. 2994, 106 L.Ed.2d 343 (1989), serious federal questions were raised and decided concerning a tribe's power to regulate land use by non-Indians owning land within its reservation. The federal question of the tribe's power over "external" relations arose from the non-Indian status of the defendants, not the location of their activity. *Id.* 109 S.Ct. at 3005–06. It is true, as Rose argues, that his activities took place on allotted trust land, and that the tribe's general power to regulate bingo operations was firmly established. *See California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987). These facts may ultimately weigh in favor of the

Band's power over Rose as "necessary to protect tribal self-government or to control internal relations," *Montana v. United States*, 450 U.S. 544, 564, 101 S.Ct. 1245, 1258, 67 L.Ed.2d 493 (1981); that issue has not yet been reached by the district court and we express no opinion on it. Our point is that Rose's arguments at best go toward *answering* the federal question; they do not erase it from the complaint.

■ Rose next argues that any federal question in this case necessarily arises only by way of defense. To uphold federal jurisdiction in such a case, he argues, would do violence to the "well-pleaded complaint" rule, which is alive and well even in the field of Indian law. *See Oklahoma Tax Comm'n v. Graham*, —— U.S. ——, 109 S.Ct. 1519, 103 L.Ed.2d 924 (1989) (state tax claim does not arise under federal law despite federally-based defense of tribal sovereign immunity). We rejected a similar contention in *Chilkat*, and its refutation was embodied in our holding that the federal question inhered in the Village's complaint. *Chilkat*, 870 F.2d at 1474–75. To enforce its ordinance against Rose, the Band will first have to establish its sovereign power to exercise civil authority over Rose. *Cf. Montana*, 450 U.S. at 565–66, 101 S.Ct. at 1258, 67 L.Ed.2d 493 (1981) (tribe may retain power to regulate non-Indians even on fee lands within reservation when their conduct threatens or directly affects tribe's political integrity, economic security, or health and welfare). That question of the power to regulate "the affairs of non-Indians" is one of federal law. *National Farmers Union*, 471 U.S. at 851–52, 105 S.Ct. at 2451. It arises from the nature of the complaint itself. *Chilkat*, 870 F.2d at 1474, 1475 & n. 9; *see Knight*, 670 F.2d at 902 (suit by tribe to enforce land-use law against non-Indians "presents no jurisdictional problem").[4] There is ac-

---

**3.** We discount considerably Rose's contention that federal jurisdiction will flood the federal courts with small claims to enforce tribal ordinances against non-Indians. In the common case where the tribe has a tribal court, it will normally bring its action there. If tribal power is challenged in federal court, the challenger will be required to exhaust tribal remedies. *Na-*

*tional Farmers Union*, 471 U.S. at 856–57, 105 S.Ct. at 2453–54.

**4.** In *Brendale*, 109 S.Ct. at 3005–09, the plurality entertained, without discussing the jurisdictional question, the tribe's claim that it had inherent power to regulate non-Indian land use within its reservation. Similarly, in *Confederated Salish*

cordingly no violation of the well-pleaded complaint rule. The district court had jurisdiction over the Band's claim against Rose.

### The Amended Complaint

After the dismissal of its original complaint, and nearly two years after its filing, the Band moved for leave to file an amended complaint. The district court denied the motion, citing the inordinate delay, prejudice to the defendants, the fact that the amended complaint would greatly change the nature of the litigation, and the potential futility of the claims. Finding no abuse of discretion, *Thomas–Lazear v. FBI*, 851 F.2d 1202, 1206 (9th Cir.1988), we affirm.

It is true that leave to amend "shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), and this policy is to be applied with extreme liberality. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987). In this case, however, the district judge was justified in exercising his discretion not to permit the amendment. The delay of nearly two years, while not alone enough to support denial, is nevertheless relevant. *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1319–20 (9th Cir.1984). The new claims set forth in the amended complaint would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense. Again, this factor is not fatal to amendment, *DCD Programs, Ltd.*, 833 F.2d at 186, but it enters into the balance.

The new federal claims were based upon the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961–1968 (1982),[5] 25 U.S.C. § 81 (regulating contracts with tribes), criminal depredation and trespass statutes, 18 U.S.C. §§ 1160 and 1163,[6] and 42 U.S.C. § 1985.[7] In light of the radical shift in direction posed by these claims, their tenuous nature, and the inordinate delay, we conclude that the district court did not clearly abuse its discretion in denying leave to amend.

In affirming the trial court's exercise of its discretion, we recognize that the denial of leave to amend occurred after the court had dismissed all claims in the original complaint for lack of jurisdiction. Our ruling that the court has jurisdiction over the Band's claim against Rose changes somewhat the posture of the case. Our affirmance of the court's denial of leave to amend is therefore without prejudice to the court's reconsideration of its ruling, should it choose to exercise its discretion anew regarding any of the claims.

### Conclusion

The dismissal of the Band's claim against Rose for lack of jurisdiction is reversed. The denial of the motions to reconsider and to permit the filing of an amended complaint is affirmed. Each party will bear its own costs.

AFFIRMED in part; REVERSED in part; REMANDED.

---

& *Kootenai Tribes v. Namen*, 665 F.2d 951 (9th Cir.), *cert. denied*, 459 U.S. 977, 103 S.Ct. 314, 74 L.Ed.2d 291 (1982), we entertained an action by two confederated tribes to enforce their land-use laws against non-Indians, and to prevent trespass, without discussing jurisdiction. *See also Chilkat*, 870 F.2d at 1474 & n. 8.

5. The predicate offense alleged in connection with RICO was violation of 18 U.S.C. § 1955. That statute outlaws gambling in violation of the law of any "State or political subdivision." Bingo games on the Band's reservation do not

violate state law. *Cabazon Band*, 480 U.S. 202, 107 S.Ct. 1083. Nor is the tribe a State or subdivision thereof.

6. We held in *Chilkat* that section 1163 provides no private right of action. *Chilkat*, 870 F.2d at 1472.

7. The complaint fails to allege a class-based animus to support the section 1985 claim. *See Lopez v. Arrowhead Ranches*, 523 F.2d 924 (9th Cir.1975).