**PEABODY COAL COMPANY; Peabody Western Coal Company; Peabody Holding Group, Inc., Plaintiffs–Appellants,**

v.

**NAVAJO NATION, Defendant–Appellee.**

No. 03–15272.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 9, 2004.

Filed June 15, 2004.

Terrance G. Reed, Reed Law Firm, Alexandria, VA, for the Plaintiffs–Appellants.

Terry E. Fenzl, Brown & Bain, Phoenix, AZ, for the Defendant–Appellee.

Before: SCHROEDER, Chief Judge, TALLMAN and CALLAHAN, Circuit Judges.

TALLMAN, Circuit Judge:

This appeal addresses whether a district court has subject matter jurisdiction over a suit brought for enforcement of an arbitration award by a non-Indian corporation against the Navajo Nation (or "the Nation"), a federally recognized Indian tribe located primarily in Arizona. The complaint filed by Plaintiffs Peabody Coal Company, Peabody Western Coal Company, and Peabody Holding Group, Inc., (collectively "Peabody") seeks enforcement of an arbitration settlement agreement made between the parties in 1998 setting royalty rates for coal mined pursuant to a com-

mercial lease. The lease itself had been previously approved by the Department of the Interior. Peabody contends that the federal question in this case is the enforceability of commercial Indian mineral leases approved by the Secretary of the Department of the Interior ("Secretary") under federal law. We hold that Peabody's claim does not meet the requirements of federal question jurisdiction under 28 U.S.C. § 1331, and we affirm the district court's dismissal of the case.

I

In 1964, Peabody's predecessor in interest (the Sentry Royalty Company) leased the right to mine substantial coal deposits located on Navajo lands (lease No. 8580). In exchange for the right to mine this coal, Peabody agreed to pay the Navajo Nation a royalty fee (a percentage of the monthly gross revenue obtained from sale of the coal). Under this original lease agreement, the Secretary was authorized to make reasonable adjustments to these royalty rates after twenty years, and every decade thereafter. In 1966, the parties entered a second lease for a different parcel of land (lease No. 9910), which did not permit the Secretary to make royalty rate adjustments.

Under the Indian Mineral Leasing Act of 1938 ("IMLA"), 52 Stat. 347, 25 U.S.C. §§ 396a–396g, the Secretary must approve mineral leases between Native tribes and commercial companies to ensure that a tribe's profits are maximized and that the lease terms are in the tribe's best interest. 25 U.S.C. § 396a. Leases 8580 and 9910 were accordingly approved by the Secretary.

In 1984, after the leases had been in effect for some twenty years, the Chairman of the Navajo Nation asked the Secretary to readjust the royalty rates. An

Interior Department Area Director for the Bureau of Indian Affairs ("BIA"), Donald Dodge, issued an initial decision raising the royalty rate for lease No. 8580 to 20%, a substantial increase over the prior level of 12.5%. Peabody challenged Dodge's decision in an administrative appeal lodged with the Department of the Interior. The Navajo Nation has alleged that, during the pendency of Peabody's appeal, a lobbyist hired by Peabody made improper *ex parte* contacts with then-Secretary Donald Hodel to encourage him to reduce the royalty rate. Secretary Hodel allegedly asked the BIA to delay issuing its decision, which allowed Peabody more time to negotiate with the Navajo Nation to obtain a lower rate.

Negotiations continued and eventually, in 1987, the parties agreed to amend the original leases in several ways. First, the 1987 amendments specified a royalty rate for lease No. 8580 of 12.5% and for lease No. 9910 of 6.25%. The parties agreed to petition the Secretary to vacate Area Director Dodge's previous decision setting the rate at 20%.

Next, the amendments created new procedures to adjust royalty rates in the future. Removing the provision in lease No. 8580 that permitted the Secretary to set a reasonable royalty rate, the parties substituted arbitration clauses in both leases as "the sole and exclusive method for the determination or readjustment of royalty rates ... for periods beginning on and after February 1, 1984." If the parties could not agree upon new rates, they agreed in advance to submit to binding arbitration. The Navajo Nation also agreed to waive its sovereign immunity from actions to enforce or appeal any resulting arbitration decision:

Lessor and its officers acting in their official capacity consent to suit in the United States District Court for the District of Arizona for the limited purpose of the enforcement or appeal of any arbitration decision pursuant to this Article, and agree not to raise sovereign immunity or exhaustion of tribal remedies as a defense to such suit.

1987 Amendments to Lease No. 8580, ¶ 12. The 1987 lease amendments were approved by Secretary Hodel as being in the Navajo Nation's best interest.

In the late 1990s, the parties attempted to renegotiate the royalty rates. When negotiations failed, the Navajo Nation requested arbitration in 1998 under the procedures created by the 1987 lease amendments. Although an arbitration panel was convened, the parties were able to reach a negotiated settlement. The settlement was memorialized in an arbitration award. The 1998 award retained the 1987 royalty rates (12.5% on lease No. 8580, 6.25% on lease No. 9910). Unlike the underlying mineral leases and their amendments, the arbitration award did not require approval by the Secretary. The parties agreed that "no action of the ... Secretary is necessary to give full and final effect to the arbitration award."

In addition, the parties executed a brief amendment to the leases. Under this amendment, Peabody agreed to pay the Navajo Nation a lump sum bonus payment of $4,500,000 in exchange for "the covenants, promises, terms and conditions contained herein and in the separate Settlement Agreement between the parties[.]" Bruce Babbitt, the new Secretary of the Interior, approved this 1998 lease amendment on March 29, 1999.

These events nonetheless spawned several lawsuits in different jurisdictions.[1] In

---

**1.** Not at issue in this appeal is the Navajo  Nation's 1993 suit against the Secretary in the

1999, the Navajo Nation sued Peabody and several other defendants in the United States District Court for the District of Columbia ("D.C.action"). The Nation alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and other related claims stemming from Peabody's alleged *ex parte* contacts with former Secretary Hodel. The relief sought by the tribe includes reformation of lease No. 8580 to incorporate the 20% royalty rate proposed by Area Director Dodge in 1987. At issue in this appeal is the complaint Peabody filed on February 21, 2002, in the United States District Court for the District of Arizona ("Arizona action"), seeking to enforce the 1998 final arbitration award between the parties. Peabody's complaint contends that because the 1998 arbitration settlement agreement was entered by the arbitration panel as a final award, and because the Navajo Nation did not appeal the award, it is enforceable in the District of Arizona under the Navajo Nation's waiver of sovereign immunity in the 1987 lease amendments.[2]

On March 29, 2002, the Navajo Nation filed a motion to dismiss Peabody's Arizona action for lack of subject matter jurisdiction due to Peabody's failure to present a federal question. Arizona District Judge Robert C. Broomfield held a brief hearing on the motion, during which counsel for the Navajo Nation was asked where Peabody could bring suit to enforce the arbitration award if not in the District of Arizona. The Navajo Nation suggested that the only court with jurisdiction would be a Navajo tribal court. Judge Broomfield granted the Navajo Nation's motion to dismiss, finding no federal question jurisdiction under 28 U.S.C. § 1331 because enforcement of the arbitration award did not raise any question about the leases or the Secretarial approval process under federal law.

## II

### A

■ We review de novo a district court's dismissal of a complaint for lack of subject matter jurisdiction. *Arizona Pub. Serv. Co. v. Aspaas,* 77 F.3d 1128, 1132 (9th Cir.1995) (as amended). We will accept the district court's factual findings on jurisdictional issues unless they are clearly erroneous. *Id.*

Court of Federal Claims, alleging that former Secretary Hodel breached his fiduciary duty to the tribe by meeting *ex parte* with a Peabody lobbyist during the royalty rate dispute in 1984, and by failing to approve the 20% royalty rate that the BIA initially recommended. The United States Supreme Court recently rejected the Nation's claim for compensation because it did not derive from any liability-imposing provision of the IMLA or its implementing regulations. *United States v. Navajo Nation,* 537 U.S. 488, 493, 123 S.Ct. 1079, 155 L.Ed.2d 60 (2003), *rev'g* 263 F.3d 1325 (Fed.Cir.2001), *rev'g* 46 Fed. Cl. 217 (2000). That case is currently on remand to the Court of Federal Claims. *See Navajo Nation v. United States,* 347 F.3d 1327, 1332 (Fed.Cir.2003).

**2.** Peabody has repeatedly tried to consolidate the two actions pending in the District of Columbia and in Arizona. In March 2002, Peabody requested the United States District Court for the District of Columbia to stay the D.C. action or transfer it to Arizona. The court declined to do so, noting that the Navajo Nation's waiver of sovereign immunity in the 1987 Amendments applies only to actions that challenge an arbitration decision, not to RICO or fraud claims. *Navajo Nation v. Peabody Holding Co.,* 209 F.Supp.2d 269, 277–78 (D.D.C.2002), *aff'd,* 64 Fed. Appx. 783, 784 (D.C.Cir.2003). Count Two of Peabody's complaint in the District of Arizona sought to compel arbitration of "all matters that are the subject of the Navajo Nation's [D.C. action]." Because Peabody's complaint was dismissed for lack of jurisdiction, the court below did not reach this request.

B

Federal courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. For a case to "arise under" federal law, a plaintiff's well-pleaded complaint must establish either (1) that federal law creates the cause of action or (2) that the plaintiff's asserted right to relief depends on the resolution of a substantial question of federal law. *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The fact that the defendant is a Native sovereign is not, by itself, sufficient to raise a federal question. *Gila River Indian Cmty. v. Henningson, Durham & Richardson*, 626 F.2d 708, 714 (9th Cir.1980).

Peabody is not bringing a cause of action created by federal law. *See Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 969 (9th Cir.1981) (holding that 9 U.S.C. § 9 does not create federal question jurisdiction in an action to confirm an arbitration award). Thus, the company must establish that its "right to relief necessarily depends on resolution of a substantial question of federal law." *See Franchise Tax Bd.*, 463 U.S. at 27–28, 103 S.Ct. 2841. Peabody asserts in its opening brief that the federal question in its complaint is "the enforceability of commercial Indian mineral leases the Interior Secretary approved under federal law." Peabody's actual complaint seeks enforcement of the final arbitration award, not the underlying leases or lease amendments, but Peabody argues that the Secretary's approval of the 1997 lease amendments, together with the general federal regulatory scheme governing such mineral leases, raises an issue of federal law. Peabody also contends that the Navajo Nation's assertion of exclusive tribal jurisdiction at the hearing before Judge

Broomfield raises a federal question. We disagree.

We have previously considered whether the federal regulation and approval of a contract or lease gives rise to a significant federal question that will establish jurisdiction under 28 U.S.C. § 1331. In *Littell v. Nakai*, 344 F.2d 486 (9th Cir.1965), we examined a complaint brought by the General Counsel of the Navajo Nation against the Chairman of the Navajo Tribal Council for tortious interference with a contract. Even though the contract between the parties had been authorized by federal law and approved by federal officials, we held that we had to examine the particular facts of the claim asserted before determining whether a federal question was present. *Id.* at 488–90. The gist of the dispute between Littell and Nakai involved a straightforward interpretation of the employment contract itself; the fact that the contract was approved by federal officials was not relevant to the resolution of the parties' dispute. *Id.* Therefore, we held that Littell's complaint did not present a federal question. *Id.*

More recently in *Arizona Pub. Serv. Co. v. Aspaas*, the main case upon which Peabody relies, we considered a dispute between the Navajo Nation and the Arizona Public Service Company ("APS"), a non-Native party operating a power plant on Navajo land pursuant to a lease approved by the Secretary. 77 F.3d at 1129–30. The Navajo Nation agreed in the lease that it would not regulate APS's operation of the power plant. *Id.* at 1130. APS enforced an anti-nepotism policy at the power plant, and the tribe initiated proceedings in a tribal forum to enjoin the policy and enforce tribal law. *Id.* at 1131. APS invoked the arbitration provisions in the parties' lease, but the Navajo Nation declined to participate. *Id.* After the Navajo Supreme Court decided that APS's poli-

cy violated the Navajo Nation's tribal employment laws, APS sued in federal court to enjoin the Navajo Nation from regulating APS's employment policies in light of the provisions in the lease agreement. *Id.* We held that a federal question was presented because the case involved a determination of whether the Navajo Nation had exceeded its authority by regulating the employment policies of a commercial entity doing business on tribal lands. *Id.* at 1134.

*Aspaas* is not dispositive in this appeal. Peabody's complaint below does not allege that the Navajo Nation has attempted to regulate Peabody's coal mines. *Aspaas* involved APS's claim that the Navajo Nation had directly breached a term of a federally approved lease by regulating APS's internal operations at the power plant. *See id.* In contrast, Peabody's complaint in the Arizona action does not allege that the Navajo Nation is currently in breach of any provision of a lease or lease amendment; Peabody seeks enforcement of the arbitration royalty award, not the lease. Peabody relies heavily on our statement in *Aspaas* that the fact that a contract is subject to federal approval is "highly probative" of whether a federal question is present. Yet the final arbitration award for which Peabody seeks enforcement was *not* federally approved. Instead, the parties agreed that "no action of ... the Secretary [was] necessary to give full and final effect to the arbitration award."

In cases from other jurisdictions involving contracts between Native sovereigns and non-Natives, the federal question in each case was either a tribal government's authority to apply tribal law to the commercial activities of non-Indian companies, or the validity of mineral leases themselves, which are both questions that can be answered only by reference to federal statutory or common law.[3] For example, in *Comstock Oil & Gas, Inc. v. Alabama & Coushatta Indian Tribes of Texas,* 261 F.3d 567 (5th Cir.2001), the Fifth Circuit considered a dispute between a tribe, which sought to have mineral leases declared void in its new tribal court, and an oil company, which sought a declaratory judgment in federal court that the leases were valid. *Id.* at 569. Noting that "[t]he question whether an Indian tribe retains the power to compel a non-Indian ... to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law and is a 'federal question' under § 1331," *id.* at 572 (quoting *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians,* 471 U.S. 845, 852, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985)), the *Comstock Oil* court concluded that it also had jurisdiction to determine whether the oil and gas leases were valid due to the extensive federal regulation of these types of leases. *Id.* at 573–75; *see also Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1077–78 (9th Cir.1990) (holding that whether a tribe had the authority to enforce a tribal ordinance against a non-Native was a federal question); *Superior Oil Co. v. United States,* 798 F.2d 1324, 1328–29 (10th Cir.1986) (holding that whether the Navajo Nation exceeded its authority by withholding approval of oil and gas lease assignments under the IMLA was a federal question); *accord*

3. In a letter brief filed pursuant to Federal Rule of Appellate Procedure 28(j), Peabody directs our attention to *Gaming World Int'l v. Chippewa Indians,* 317 F.3d 840 (8th Cir. 2003), in which the Eighth Circuit held that a dispute over whether an Indian gaming contract received valid approval was a proper basis for federal jurisdiction. *Id.* at 848. We agree with the Navajo Nation that because this case does not involve the validity of the coal leases, *Gaming World Int'l* does not help Peabody's position.

*Chilkat Indian Vill. v. Johnson,* 870 F.2d 1469, 1474 (9th Cir.1989); *Tenneco Oil Co. v. Sac & Fox Tribe of Indians of Okla.,* 725 F.2d 572, 575–76 (10th Cir.1984).

Peabody relies on *Comstock Oil, Superior Oil,* and *Tenneco Oil* for the proposition that oil and gas leases on tribal lands are not mere contracts. Instead, many courts have noted that these leases "represent a very specialized subset of contracts" because of the extensive federal regulatory scheme governing them. *Comstock Oil,* 261 F.3d at 574–75. While that is certainly true, Peabody's claim here does not allege any problem with the underlying leases or their amendments. The only contract at issue in Peabody's claim is the arbitration settlement agreement, which is not a specialized type of contract that is subject to extensive federal regulation.

This case is thus markedly different from the decisions cited above. Peabody does not contest the validity of the coal mining leases or their amendments, nor does it allege that the Navajo Nation has breached a lease or lease amendment.[4] The Navajo Nation has not attempted to exceed its authority by regulating any aspect of Peabody's commercial enterprise under tribal law. Navajo tribal courts have not attempted to subject Peabody to their jurisdiction. In cases where a Native sovereign has not tried to assert authority over a non-Native party, and where the validity of a federally-regulated contract is not at issue, courts have not found a substantial federal question to be present.

See, e.g., *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians,* 94 F.3d 747, 752–53 (2d Cir.1996) (holding that where the validity of a contract was not disputed, the fact of federal review and approval did not convert a simple breach of contract claim into a federal cause of action); *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians,* 999 F.2d 503, 507 (11th Cir.1993) (finding no federal question jurisdiction where plaintiff only presented facts establishing a breach of contract claim); *Littell,* 344 F.2d at 487–88 (holding that there is no federal question where the main dispute is centered on a contract and its construction, rather than the validity of the federal approval of the contract); *accord Gila River Indian Cmty.,* 626 F.2d at 714–15. As in these cases, Peabody's claim for enforcement of an arbitration award sounds in general contract law and does not require the resolution of a substantial question of federal law.

Although Peabody's claim is titled "Enforcement of an Arbitration Award," the company has not alleged that either party is failing to comply with the award. As Peabody conceded at oral argument, coal is being mined and sold. Peabody is paying royalties to the Navajo Nation at the rates found in the arbitration award. There is simply no need for the award to be "confirmed," as Peabody suggests in its reply brief. Whether the Navajo Nation is somehow in breach of this award is an issue that can be resolved by the common law of contracts. Federal approval of the underlying leases or amendments has no

---

4. Peabody has submitted, pursuant to Federal Rule of Appellate Procedure 28(j), a copy of a complaint the Navajo Nation filed against Peabody in an unrelated action in the United States District Court for the District of Arizona. In that complaint, the Navajo Nation contends that the coal mining leases are invalid because the Nation must share a portion of its proceeds with the Hopi Tribe. *See Peabody Coal v. Navajo Nation,* 75 F.3d 457

(9th Cir.1996). Peabody contends that the Navajo Nation's complaint is an "admission" that federal jurisdiction arises under the IMLA and that this admission supports Peabody's position. We disagree. Unlike the separate action the Navajo Nation has filed, Peabody's complaint does *not* allege any problem with the validity of the underlying coal mining leases.

material bearing on whether this award requires confirmation or enforcement. Therefore, Peabody's complaint does not present a federal question.[5]

## C

Peabody's second asserted basis for federal question jurisdiction is the statement made by the Navajo Nation's counsel at the motion hearing before Judge Broomfield regarding the proper court where Peabody may bring an action to enforce the award. The Navajo Nation's attorney stated that because Peabody's claim for enforcement of the arbitration award did not raise a federal question, the proper forum for such an action would be the Navajo Nation's tribal courts instead of federal court. Whether a tribal court may assert jurisdiction over non-Natives is certainly a question of federal law, *see United States ex rel. Morongo Band of Mission Indians v. Rose*, 34 F.3d 901, 905 (9th Cir.1994), but the Navajo Nation has not hailed Peabody before its tribal courts. Because Peabody's complaint makes no reference to any existing dispute about asserted tribal court jurisdiction or authority, no federal question is present. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937) (federal courts may only resolve real or substantial controversies, "admitting of specific relief through a decree of a conclusive character as distinguished from an opinion advising what the law would be upon a hypothetical state of facts").

## III

The district court correctly dismissed this case for lack of subject matter juris-

diction because Peabody's complaint did not present a substantial question of federal law. We need not reach the Navajo Nation's suggestion to affirm on the alternate grounds of sovereign immunity or Peabody's failure to state a claim under Fed.R.Civ.P. 12(b)(6).

**AFFIRMED.**

---

**5.** It is well-settled that the provisions of 9 U.S.C. § 9 do not by themselves confer subject matter jurisdiction. *Gen. Atomic Co.*, 655 F.2d at 969. In this case, we do not decide whether the existence of a federal question in an arbitrated dispute would confer subject

matter jurisdiction under 28 U.S.C. § 1331 to confirm or enforce the resulting arbitration award pursuant to 9 U.S.C. § 9. Rather, we simply hold that no substantial federal question was arbitrated or implicated here.