**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

COEUR D'ALENE TRIBE, a
federally recognized Indian
Tribe,
*Plaintiff-Appellant*,

v.

STEVE W. HAWKS;
DEANNE A. HAWKS,
*Defendants-Appellees.*

No. 17-35755

D.C. No.
2:16-cv-00366-BLW

OPINION

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted October 12, 2018
Portland, Oregon

Filed August 9, 2019

Before: Richard R. Clifton and Consuelo M. Callahan,
Circuit Judges, and Roger T. Benitez,* District Judge.

Opinion by Judge Clifton

---

* The Honorable Roger T. Benitez, United States District Judge for
the Southern District of California, sitting by designation.

## SUMMARY[**]

### Tribal Matters / Subject Matter Jurisdiction

The panel reversed the district court's order dismissing for lack of subject matter jurisdiction an action filed by an Indian tribe seeking to enforce a tribal court judgment against nonmembers.

The panel held that inherent in the recognition of a tribal court's judgment against a nonmember is a question regarding the extent of the powers reserved to the tribe under federal law. Because the action presented a substantial issue of federal law, the district court had federal question jurisdiction under 28 U.S.C. § 1331.

The panel reversed the district court's order and remanded for further proceedings.

## COUNSEL

Jillian H. Caires (argued) and Peter J. Smith IV, Smith & Malek PLLC, Coeur d'Alene, Idaho, Plaintiff-Appellant.

Norman M. Semanko (argued), Parsons Behle & Latimer, Boise, Idaho; Matthew J. McGee, Spink Butler LLP, Boise, Idaho; for Defendants-Appellees.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

CLIFTON, Circuit Judge:

This appeal presents the question of whether the grant of federal question jurisdiction in 28 U.S.C. § 1331 encompasses an action to recognize and enforce a tribal court's award against nonmembers of the tribe. The district court concluded that the action, filed by an Indian tribe seeking to enforce a tribal court judgment against nonmembers, did not present a federal question and dismissed it based on a lack of subject matter jurisdiction. Inherent in the recognition of a tribal court's judgment against a nonmember is a question regarding the extent of the powers reserved to the tribe under federal law. As in previous decisions involving the application of tribal law to nonmembers, we hold that actions seeking to enforce a tribal judgment against nonmembers raise a substantial question of federal law. We accordingly reverse the district court's order dismissing the case for lack of subject of matter jurisdiction.

## I.  Background

Plaintiff-Appellant Coeur d'Alene Tribe (the "Tribe") is a federally recognized Indian Tribe and the beneficial owner of submerged portions of Lake Coeur d'Alene and the St. Joe River. *See Idaho v. United States*, 533 U.S. 262, 265 (2001). Defendants-Appellees Steve and Deanne Hawks are not members of the Tribe but own an interest in real property abutting the St. Joe River. The Hawks also own and maintain a boat garage set on pilings that extend from their property into the St. Joe River. Beginning in 2003, the Tribe advised the Hawks through letters and compliance orders that the

pilings and boat garage encroached on land the Tribe is entitled to control. The Hawks never responded.

In 2016, the Tribe sued the Hawks in the Coeur d'Alene Tribal Court (the "Tribal Court") for encroachment without a permit in violation of tribal law. The Hawks were served with notice but did not answer the complaint or otherwise contest the allegations. The Tribal Court accordingly entered default judgment against the Hawks in the form of a $3,900 civil penalty and a declaration that the Tribe was entitled to remove the encroachments.[1]

The Tribe subsequently sought federal recognition and enforcement of the Tribal Court's judgment by filing a complaint in the U.S. District Court for the District of Idaho.[2] The Hawks moved to dismiss the complaint for lack of subject matter jurisdiction. The Tribe responded by arguing that the case fell under the court's jurisdiction to adjudicate questions of federal law because in order to enforce the judgment, the court would be required to determine the extent of the Tribal Court's jurisdiction over nonmembers, a question that federal law governs. Although the district court acknowledged that the Tribal Court's authority over the

---

[1] The tribal exhaustion doctrine, which requires federal courts to abstain until tribal appellate courts have had the opportunity to review the rulings of lower tribal courts, is not relevant as the Hawks did not appeal the Tribal Court's ruling and there is no related litigation pending in the Tribal Court. *See Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 16 & n.8 (1987).

[2] Recognizing that the civil penalty is punitive in nature and that a court will not enforce the penal laws of another sovereign, the Tribe has abandoned on appeal its request to enforce the $3,900 penalty. *See de Fontbrune v. Wofsy*, 838 F.3d 992, 1000–01 (9th Cir. 2016).

Hawks presented a federal question, it held the question was not present on the face of the Tribe's complaint. Having found "no federal statute or law . . . in dispute," the district court dismissed the suit for lack of subject matter jurisdiction. The Tribe timely appealed.

## II. Discussion

We have appellate jurisdiction under 28 U.S.C. § 1291 and review the district court's dismissal for lack of subject matter jurisdiction de novo. *See Peabody Coal Co. v. Navajo Nation*, 373 F.3d 945, 948 (9th Cir. 2004).

The cases that a federal court may decide are limited to those authorized by the Constitution and federal statutes and are "not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). We are to "presume[] that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citations omitted); *see also Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).

Congress has granted federal courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.**[3]** Included within

---

**[3]** On appeal, the Tribe has asserted 28 U.S.C. § 1331 as the sole basis for the district court's authority to enforce the Tribal Court judgment. The Tribe's complaint, however, invoked the court's jurisdiction under 28 U.S.C. § 1362, which confers jurisdiction over all civil actions, brought by an Indian tribe, that arise under the Constitution, laws, or treaties of the United States. *See Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 663 (1974). While this statute allows Indian tribes to invoke federal question jurisdiction without an amount in controversy, the elimination of

this grant of jurisdiction are cases arising under rules articulated by federal courts in the form of federal common law. *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850 (1985). An action arises under federal law only if federal law "creates the cause of action" or "a substantial question of federal law is a necessary element" of a plaintiff's well-pleaded complaint. *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1383 (9th Cir. 1988). "This means that a plaintiff may not establish federal jurisdiction by asserting in its complaint that the defendant will raise a federal-law *defense* to the plaintiff's claim, . . . or by including in its complaint allegations of federal-law questions that are not essential to its claim. . . ." *Id.* (citations omitted).

Because the district court complaint did not explicitly present any federal cause of action, jurisdiction of the federal courts over this action depends on the necessary presence of a substantial question of federal law. *See Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27–28 (1983); *Morongo Band*, 858 F.2d at 1383. In deciding whether a federal ingredient suffices for a case to arise under federal law, the Supreme Court has emphasized:

> [I]n exploring the outer reaches of § 1331, determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the

---

the amount-in-controversy requirement under § 1331 has rendered § 1362 largely superfluous. *See Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1383 (9th Cir. 1988); *Gila River Indian Cmty. v. Henningson, Durham & Richardson*, 626 F.2d 708, 710 (9th Cir. 1980).

federal system. "If the history of the interpretation of judiciary legislation teaches us anything, it teaches the duty to reject treating such statutes as a wooden set of self-sufficient words."

*Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 810 (1986) (quoting *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 379 (1959)).

"[F]ederal question jurisdiction does not exist merely because an Indian tribe is a party . . . ." *Stock W.*, 873 F.2d at 1225. Nor is there any general "federal common law of Indian affairs." *Inyo County v. Paiute-Shoshone Indians*, 538 U.S. 701, 712 (2003). Rather, we must articulate a specific rule of federal common law under which the Tribe's case arises. *See id.*

The Tribe has argued that its enforcement action arises under federal common-law rules limiting its authority over nonmembers. A tribe's authority does not spring from federal law but rather derives from the "inherent powers of a limited sovereignty which has never been extinguished." *United States v. Wheeler*, 435 U.S. 313, 322 (1978) (emphasis omitted) (quoting Felix Cohen, Handbook of Federal Indian Law 122 (ed. 1945)), *superseded by statute on other grounds*. Tribal sovereignty nevertheless "exists only at the sufferance of Congress and is subject to complete defeasance." *Id.* at 323. Thus, because "federal law defines the outer boundaries of an Indian tribe's power over non-Indians," *Nat'l Farmers*, 471 U.S. at 851, the question of "whether a tribal court has adjudicative authority over nonmembers is a federal question," *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 324 (2008).

In *National Farmers Union Insurance Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 847 (1978), a tribal court entered default judgment against a school district. The school district subsequently sued in federal court to prevent execution of the tribal court's judgment, claiming that the tribal court lacked jurisdiction. *Id.* The Supreme Court held that the school district's "right to be protected against an unlawful exercise of [a tribe's] judicial power" presented a federal question, as the right could not be vindicated without reference to the federal law that curtailed the tribe's authority. *Id.* at 851–53; *see also Ariz. Pub. Serv. Co. v. Aspaas*, 77 F.3d 1128, 1132 (9th Cir. 1995).

Had the Hawks brought a "colorable claim" in federal court, alleging the Tribal Court lacked jurisdiction, *National Farmers* would directly control. *Imperial Granite Co. v. Pala Band of Mission Indians*, 940 F.2d 1269, 1272 n.5 (9th Cir. 1991). It is the Tribe, not the Hawks, however, who brought suit. And it is not protection from the Tribal Court's judgment the complaint seeks, but enforcement of it. Even if the Hawks had defended on the basis that the Tribal Court lacked jurisdiction over them, that federal issue would have been present only in the form of an anticipated defense. To find jurisdiction on that basis alone would contravene the well-pleaded complaint rule. *See Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009); *Begay v. Kerr-McGee Corp.*, 682 F.2d 1311, 1314–15 (9th Cir. 1982); *see also Okla. Tax Comm'n v. Graham*, 489 U.S. 838, 841 (1989) (holding a tribe's sovereign immunity defense insufficient to raise a federal question); *Morongo Band*, 858 F.2d at 1386.

Relying on our decision in *Wilson v. Marchington*, 127 F.3d 805 (9th Cir. 1997), the Tribe contended an examination of the scope of a tribal court's jurisdiction is an

implicit predicate to any suit seeking to enforce a tribal judgment against a nonmember.  In *Marchington*, without expressly articulating the basis for federal jurisdiction, we reached the merits in an action brought by a tribe member seeking to enforce a tribal court's award that arose out of a vehicle accident with a nonmember.[4]  We declined to extend the Full Faith and Credit Clause to recognition of tribal judgments but stated "as a general principle, federal courts should recognize and enforce tribal judgments" under principles of comity.  *Id.* at 810.  The nonmember defendant objected to the award's enforcement on the grounds that the tribal court lacked jurisdiction.  We agreed and, as a result, refused to recognize the award.  *Id.* at 815.[5]

---

[4] The mere fact that we reached the merits in *Marchington* does not necessarily answer the question of whether the district court had jurisdiction in the present case.  *See Ordonez v. United States*, 680 F.3d 1135, 1139 (9th Cir. 2012) ("'When questions of jurisdiction have been passed on in prior decisions sub silentio' a court is not bound 'when a subsequent case finally brings the jurisdictional issue' to the forefront." (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119 (1984))).

[5] The district court distinguished *Marchington* by noting that there "both sides sought a ruling on whether the tribal court had jurisdiction." Even assuming the *Marchington* plaintiff had sought a declaration establishing the tribal court's jurisdiction, manufacturing a federal question this way would, by itself, likely have been insufficient to cure any jurisdictional defect.  *See Franchise Tax Bd.*, 463 U.S. at 16; *Stillaguamish Tribe of Indians v. Washington*, 913 F.3d 1116, 1118 (9th Cir. 2019) ("Parties cannot circumvent the well-pleaded complaint rule by filing a declaratory judgment action to head off a threatened lawsuit."). And, as noted above, the fact that the nonmember defendants in *Marchington* contested the tribal court's jurisdiction would not have been relevant to the question of federal question jurisdiction, which depends solely on the plaintiff's well-pleaded complaint.

We observed in *Marchington* that whether a tribal court has subject matter jurisdiction is "a threshold inquiry in virtually every federal examination of a tribal judgment." 127 F.3d at 811. Although the same could be said about an action to enforce any foreign judgment, our opinion implicitly seemed to recognize that the "threshold inquiry" in actions seeking enforcement of tribal judgments turned on a substantial issue of federal law because of the federal government's unique relationship with Indian tribes. *See id.* at 813; *see also Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1140–42 (9th Cir. 2001) (reaching the merits in an action seeking to enforce a tribal award without explaining basis for federal jurisdiction).

With the issue now presented squarely before us, we conclude the Tribe's action to enforce the Tribal Court's judgment against a nonmember presents a substantial issue of federal law.

We begin with the Supreme Court's decision in *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661 (1974). There, the Oneida Indian Nation sought to eject the state of New York from lands it claimed to have owned "from time immemorial." *Id.* at 664. It alleged that cessations of land to New York during the eighteenth century were invalid, in part, because the United States had not consented as required by federal law. *Id.* at 664–65. The Second Circuit concluded the suit was nothing more than a state ejection action, under which the Oneidas merely needed to establish possessory rights, and that the question of whether the concession complied with federal law was present only as an anticipated defense. *Id.* at 665–66. It accordingly held the Oneidas' claim "shatter[ed] on the rock of the 'well-pleaded complaint' rule for determining federal question jurisdiction." *Id.* at 665.

The Supreme Court reversed, concluding that because "[t]he threshold allegation required of such a well-pleaded complaint—the right to possession—was plainly enough alleged to be based on federal law," the federal question "did not arise solely in anticipation of a defense." *Id.* at 666. It noted that regardless of which party was entitled to the land, the Oneidas' asserted right to possession was not "so insubstantial, implausible, . . . or otherwise completely devoid of merit as not to involve a federal controversy." *Id.* The Supreme Court later characterized this holding as "similar" to complete preemption cases in which the preemptive force of federal law "is so powerful as to displace entirely any state cause of action." *Franchise Tax Bd.*, 463 U.S. at 23 & n.25; *see* Kaighn Smith, Jr., *Federal Courts, State Power, and Indian Tribes: Confronting the Well-Pleaded Complaint Rule*, 35 N.M. L. Rev. 1, 21–23 (2005).

Drawing on *Oneida Indian Nation* and *National Farmers*, we have held there was federal question jurisdiction in several actions involving tribes suing nonmembers for civil violations of tribal law. These cases presented a federal question, we concluded, because an Indian tribe's "power to apply [a tribal ordinance] will require a showing of its authority, under federal law, to enact and enforce this ordinance against non-members." *Native Vill. of Tyonek v. Puckett*, 957 F.2d 631, 634 (9th Cir. 1992).[6]

---

[6] Additionally, the Supreme Court has expressly recognized tribes' "federal common-law right to sue to enforce their aboriginal land rights." *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 235 (1985); *see also United States v. Milner*, 583 F.3d 1174, 1182 (9th Cir. 2009) ("Federal common law governs an action for trespass on Indian lands."). We thus recognize, without deciding, that had the Tribe originally sought to eject the Hawks by suing in district court, federal question jurisdiction may have been proper. This does not establish federal jurisdiction in this

In *Chilkat Indian Village v. Johnson*, 870 F.2d 1469, 1473–75 (9th Cir. 1989), for example, the Chilkat Indian Village (the "Village") sued a nonmember defendant in federal district court for removing several native artifacts in violation of a Village ordinance. The defendant moved to dismiss the case for lack of subject matter jurisdiction, claiming that the alleged violation of the Village ordinance did not present a federal question. We observed that by seeking to apply its ordinance to a nonmember, the Village was "pressing 'the outer boundaries of an Indian tribe's power over non-Indians[,]' which 'federal law defines.'" *Id.* at 1474 (alteration in original) (quoting *Nat'l Farmers*, 471 U.S. at 851). We acknowledged that some of these federal issues were "purely defensive," but decided the complaint complied with the well-pleaded complaint rule because "the Village's allegations of sovereign power, . . . which could only be cognizable as a matter of federal common law" brought the "case within the rule of *Oneida Indian Nation.*" *Id.* at 1475. We concluded "[i]t would be too technical . . . to focus only on the ultimate ordinance, which is not federal, and to ignore the necessity for the Village to prove its disputed federal power to enact and apply it to those outside of its community." *Id.* We accordingly held that "[a]lthough the matter is certainly not free from

---

case, however. We cannot recast this action to domesticate a tribal judgment as an ejectment action in order to provide a basis for federal jurisdiction. The Tribal Court was asked to adjudicate the property rights; the district court was asked to enforce the result of that adjudication. Comity prohibits relitigation of the underlying merits and therefore could not provide the jurisdictional basis. *See Marchington*, 127 F.3d at 810 n.4 ("[T]he merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of the party that the judgment was erroneous in law or in fact." (quoting *Hilton v. Guyot*, 159 U.S. 113, 202–03 (1895))).

doubt, . . . the claims for enforcement of the [Village] ordinance against the non-Indian defendants d[id] arise under federal law within the meaning of 28 U.S.C. [§] 1331." *Id.* at 1473.

Shortly afterward, in *Morongo Band of Mission Indians v. Rose* (*Rose*), 893 F.2d 1074, 1076 (9th Cir. 1990), the Morongo Band of Indians (the "Band") sued a nonmember in federal court for violating the Band's ordinance regulating bingo games on the reservation. Again, the question before us was whether federal question jurisdiction existed over the Band's action to enforce its ordinance against a nonmember. *Id.* at 1077. Relying on *Chilkat*, we held a federal question "inhere[d] in [the Band's] complaint" because "[i]n attempting to enforce its ordinance against [a nonmember], the Band necessarily invoke[d] its sovereign power and relie[d] on its disputed ability, under principles of federal common law, to apply that power against one outside of its community." *Id.*; *see id*. at 1078 ("It arises from the nature of the complaint itself."). We declined to distinguish *Chilkat* on the fact that the nonmember lived on the Band's reservation, noting the federal question arose out of the defendant's status as a nonmember and not the location of his activity. *Id.* at 1078. We also reaffirmed *Chilkat*'s holding that asserting jurisdiction did not violate the well-pleaded complaint rule because "[t]o enforce its ordinance against [a nonmember], the Band w[ould] first have to establish its sovereign power to exercise civil authority over [him]" and "the power to regulate 'the affairs of non-Indians' is one of federal law." *Id.* (quoting *Nat'l Farmers*, 471 U.S. at 851–52).

Although these cases featured tribes asserting their legislative power over nonmembers, they cannot be distinguished from the Tribe's exercise of its judicial powers

in this case. And while we did not explicitly discuss the basis for federal jurisdiction in *Marchington*, discussed above, our effective conclusion there that we had jurisdiction was consistent with, and a tacit extension of, our reasoning in these earlier decisions. *See Marchington*, 127 F.3d at 811.

By seeking to enforce its judgment against the Hawks, the Tribe was "pressing 'the outer boundaries'" of its authority over nonmembers. *Chilkat*, 870 F.2d at 1474 (quoting *Nat'l Farmers*, 471 U.S. at 851). It was in essence asking the district court to determine whether the Tribal Court validly exercised the powers "reserved" to it under federal common law. *Id.* at 1475 (citing *Nat'l Farmers*, 471 U.S. at 845). Because the Tribe's enforcement action required a "showing of its authority" over nonmembers, *Native Vill. of Tyonek*, 957 F.2d at 634, we conclude that the Tribe's invocation of its sovereign power over the Hawks inhered in the district court complaint, *see Rose*, 893 F.2d at 1077.[7]

---

[7] As in *Chilkat*, we acknowledge the question before us "is a close one." *Chilkat*, 870 F.2d at 1475. Only the Tenth and Eleventh Circuits have had occasion to address this issue, and they reached different results. In line with our holding today, the Tenth Circuit has concluded "[t]he question of the regulatory and adjudicatory authority of the tribes—a question bound up in the decision to enforce a tribal court order—is a matter of federal law giving rise to subject matter jurisdiction under 28 U.S.C. § 1331." *MacArthur v. San Juan County.*, 497 F.3d 1057, 1066 (10th Cir. 2007); *see also id.* n.4. The Eleventh Circuit, however, has held that the federal issue in *National Farmers*—the right to be free from a tribal court without jurisdiction—is not implicated in a suit seeking to "domesticate a tribal judgment" and has accordingly held that such suits do "not state a claim under federal law, whether statutory or common law." *Miccosukee Tribe of Indians v. Kraus-Anderson Const. Co.*, 607 F.3d 1268, 1275 (11th Cir. 2010).

The Hawks' decision not to contest the Tribal Court's jurisdiction does not differentiate this case from the cases discussed above in which the tribes' authority over nonmembers was specifically disputed. *See, e.g.*, *Chilkat*, 870 F.2d at 1474 (noting "the Village's power under the federal statute or common law to enact and apply [its ordinance to nonmembers] is open to immense dispute"); *Rose*, 893 F.2d at 1077.[8] Recognizing that the determination of a tribe's jurisdiction involves "a complex patchwork of federal, state and tribal law, which is better explained by history than by logic," we have repeatedly observed "[t]here is no simple test for determining whether tribal court jurisdiction exists." *Smith v. Salish Kootenai Coll.*, 434 F.3d 1127, 1130 (9th Cir. 2006) (alteration in original) (internal marks omitted) (first quoting *United States v. Bruce*, 394 F.3d 1215, 1218 (9th Cir. 2005); then quoting *Stock W.*, 873 F.2d at 1228); *see also Nat'l Farmers*, 471 U.S. at 855–56 ("[T]he existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions." (footnote omitted)).  In order to recognize the Tribal Court's judgment against the Hawks, the district court would have had to consider the various factors set forth in *Montana v. United States*, 450 U.S. 544 (1981), and determine potentially complex questions of land ownership. *See Coeur d'Alene Tribe v. Johnson*, 405 P.3d 13, 19–20 (Idaho 2017) (analyzing *Montana* factors under nearly identical facts).

---

[8] Despite the Tribe's assertion to the contrary, the record does not indicate the Hawks have expressly conceded that the Tribal Court's exercise of personal and subject matter jurisdiction was proper.

Our decision today should not be construed as recognizing federal question jurisdiction anytime a tribe sues a nonmember. *See Gila River Indian Cmty.*, 626 F.2d at 715 ("Otherwise the federal courts might become a small claims court for all such disputes.").**[9]**  Nor is our holding relevant to situations in which a tribe is not acting in its sovereign capacity or cases that do not implicate a tribe's relationship with the federal government. *See Peabody Coal Co.*, 373 F.3d at 951 (holding no federal question presented in a breach of contract action with a nonmember where the Indian sovereign had not attempted to regulate the nonmember's activity or subject it to its tribal court's authority); *Begay*, 682 F.2d at 1315; *Gila River Indian Cmty.*, 626 F.2d at 715. We emphasize that our holding is confined to the facts presented—a tribe seeking to enforce a tribal court judgment against a nonmember. *Compare Chilkat*, 870 F.2d 1473–75, *with Boe v. Fort Belknap Indian Cmty.*, 642 F.2d 276, 280 (9th Cir. 1981) (concluding that a tribe's attempt to apply its ordinance to a tribal member did not raise a federal question); *see also Native Vill. of Tyonek*, 957 F.2d at 634.

---

**[9]** We additionally reject the Tribe's contention that federal question jurisdiction may be premised on federal common law's role in establishing the rules under which tribal judgments are recognized. *See Marchington*, 127 F.3d at 813. This argument "puts the proverbial cart before the horse" as the rules of recognition apply only after the court has determined it has jurisdiction. *See Taveras v. Taveraz*, 477 F.3d 767, 783 (6th Cir. 2007); *see also Miccosukee Tribe of Indians*, 607 F.3d at 1275. Comity merely supplies the conditions under which a court may exercise its discretion to recognize the judicial acts of a foreign tribunal and cannot confer federal question jurisdiction any more than can the Full Faith and Credit Clause. *See Minnesota v. N. Sec. Co.*, 194 U.S. 48, 72 (1904) (holding that the statute effectuating the Full Faith and Credit Clause "does not make a case arising under the Constitution or laws of the United States").

## III.    Conclusion

In sum, we conclude that a federal question inhered in the Tribe's complaint because in order to impose its policy, embodied in a declaration by its judiciary, it will inevitably be forced to establish its authority to do so under federal common or statutory law.  *See Chilkat*, 870 F.2d at 1474 n.9. We accordingly reverse the district court's dismissal for lack of subject matter jurisdiction and remand for further proceedings.

**REVERSED and REMANDED.**